# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 03-3331

ONETA S. COLE,

*Plaintiff-Appellant*,

*v.*

U.S. CAPITAL, INCORPORATED,
AUTONATION USA CORPORATION,
and JERRY GLEASON CHEVROLET,
INCORPORATED,

*Defendants-Appellees*.

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 1858—**John W. Darrah**, *Judge*.

————————

ARGUED FEBRUARY 17, 2004—DECIDED NOVEMBER 19, 2004

————————

Before RIPPLE, KANNE and WILLIAMS, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Oneta S. Cole filed a complaint, and later an amended complaint, in which she alleged violations of the Fair Credit Reporting Act ("FCRA"). The defendants, U.S. Capital, Inc., AutoNation USA Corp. ("AutoNation"),[1]

---

[1] AutoNation is a Florida corporation that is alleged to be
(continued...)

and Jerry Gleason Chevrolet, Inc. ("Gleason Chevrolet"), moved to dismiss the second amended complaint. The district court granted the defendants' motion. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.[2]

# I

# BACKGROUND

## A. Facts

Ms. Cole received a promotional credit flyer from U.S. Capital, Inc. and Gleason Chevrolet. The flyer, which she attached to her complaint, states that Ms. Cole is "pre-approved to participate in an exclusive offer from U.S. Capital and Jerry Gleason Chevrolet." R.37, Ex.A. The flyer explains that she is eligible to "receive a Visa or MasterCard with limits up to $2000 as well as up to $19,500 in AUTO-MOTIVE CREDIT!" *Id.* The flyer then discusses Ms. Cole's ability to purchase a car from Gleason Chevrolet without payments until 2002. Under large, bold letters it instructs Ms. Cole how to activate her card by responding prior to December 8, 2001.

In the bottom one inch (approximately) of the page, in

---

[1] (...continued)
affiliated with auto dealerships throughout the Country, including Jerry Gleason Chevrolet, Inc.

[2] After oral argument, the court invited the Federal Trade Commission ("FTC"), the agency charged with administering the FCRA, to file a brief as amicus curiae. The FTC accepted the court's invitation, and the court expresses its thanks to the FTC for the assistance that it has rendered.

much smaller type, the flyer informs Ms. Cole that:

> We have determined that you meet our initial criteria for inclusion in this special credit offer. Because it is an exclusive opportunity we could not offer it to every one. You were selected based on information obtained in your consumer report from Trans Union L.L.C. and the final acceptance is subject to your ability to meet our full eligibility requirements.

*Id.* The text then specifies the criteria that she would have to meet to take advantage of the offer. Among the requirements, the recipient of the offer must not have a monthly car payment that exceeds 50% of her gross income, the recipient must be eighteen years of age with an annual income of at least $18,000, and all bankruptcies must be discharged. The flyer then states that:

> Lender reserves the right to require consumer to pay off currently financed vehicle and may require consumer to increase down payment, which will affect equity and collateral. In any event, you are guaranteed to receive a credit line of at least three hundred dollars for the purchase of a vehicle, GRSI, Coral Springs, FL. If at the time of offer consumer no longer meets the initial criteria, offer may be revoked. We hope you are pleased with the opportunity it affords. If you prefer that your name be omitted from future offerings, please contact Trans Union, Marketing Opt Out, and PO BOX 97328, Jackson, MS 39288-7328 or call 1-888-546-8688.

*Id*. Finally, the flyer concludes with a "CREDIT CARD DISCLAIMER." *Id.* It states that the customer authorizes U.S. Capital Financial Services to act as an agent to obtain a credit card for the customer. It then explains that "[g]uaranteed approval is neither expressed nor implied, interest

rates may vary from 2.9% to 24.9% based on individual credit worthiness and lenders credit parameters." *Id.*

## B.  District Court Proceedings

After receiving the flyer, Ms. Cole brought the present action in district court seeking statutory damages and attorneys' fees for alleged violations of the FCRA.[3] In her initial complaint, Ms. Cole alleged that she had not requested the materials that she had received from the defendants. Furthermore, she had not authorized anyone to access her credit report, and therefore, there was no legitimate reason for the defendants to access her credit information. Specifically, Ms. Cole alleged that the materials did not qualify as a firm offer of credit as used in the FCRA. She claimed that "[a]n offer of a $300 line of credit useable only to finance the purchase of an automobile is a sham." R.37 at 3 ¶ 12.a. The offer was made, she averred, to obtain credit information; it was not extended with the expectation that consumers would avail themselves of the offer.

Ms. Cole also alleged that the terms of the offer were too vague to constitute an offer capable of acceptance. In support of this allegation, Ms. Cole pointed to the fact that the flyer reserves the right to set material terms. Additionally, the offer is ambiguous; the $300 line of credit is characterized first as "guaranteed," but the flyer later states that "[g]uaranteed approval is neither expressed nor implied." *Id.* ¶ 12.c (quoting R.37, Ex.A). Finally, she claimed that the reservation of the right to require the consumer to pay off existing automobile loans "effectively

---

[3]  Ms. Cole also sought class certification.

constitutes an option to withdraw the $300 line of credit." *Id.* ¶ 12.d.

The district court dismissed Ms. Cole's first amended complaint. It held that the defendants had obtained the plaintiff's credit report for a permissible purpose under the FCRA. Specifically, the court held that the defendants obtained the report for the extension of a firm offer of credit. The court rejected Ms. Cole's contention that the $300 credit line was "too paltry a sum to be a 'firm offer.' " R.27 at 6. It reasoned that "the complaint does not allege the $300 credit line to be a sham nor is any inference in the mailing." *Id.* The court found the offer of "at least" $300 was consistent with the FCRA because the FCRA "permits conditioning a firm offer of credit on 'the consumer being determined, based on information in the consumer's application for the credit[,] . . . to meet specific criteria bearing on credit worthiness' " that were established before the selection of the consumer for the offer. *Id.* (quoting 15 U.S.C. § 1681a(l)(1)(A), (B)). Accordingly, the court concluded that the complaint failed to state a claim upon which relief could be granted.[4]

Ms. Cole then filed a second amended complaint in which she alleged that the flyer was not a firm offer of credit because (1) it was a sham to justify obtaining credit information; (2) it contained an offer that is too vague to

---

[4] Soon after the dismissal, Ms. Cole moved for reconsideration. She asserted that the court had failed to address her contentions that no offer was made because the terms were insufficient to permit acceptance, the offer was not clear and conspicuous, and the offer of $300 was too small to constitute a firm offer. The court denied the motion for reconsideration; it held that Ms. Cole's arguments had been addressed and rejected in its decision. The court again permitted leave to file an amended complaint.

be accepted; (3) the language of the flyer was ambiguous or mutually inconsistent; (4) the reservation of a right to require the consumer to pay off existing car loans constituted an option to withdraw the $300 offer; and (5) the disclosure did not comply with the requirements of § 1681m(d) because it is not clear and conspicuous.

Again, the defendants moved to dismiss the complaint, and the district court granted the motion. The court found that there was a guarantee of a $300 credit line and that the flyer indicated that the offer would be honored as required by the FCRA. The court explained that there was no suggestion, other than Ms. Cole's conclusory allegations, that the $300 credit amount would not have been honored. Additionally, the court reasoned, some consumers would be eligible for more than the minimum amount of credit.

The district court also rejected Ms. Cole's argument that the offer was too vague to constitute an offer under Illinois law. The court held that Illinois law did not apply to the offer because there was a presumption, unrebutted in this case, that Congress did not make the application of the federal law dependent on state law. The court believed that Congress intended the FCRA to have uniform application, and, therefore, the definition of what constitutes an offer under Illinois law was not relevant to the determination of whether the flyer constituted a firm offer of credit under § 1681. The court therefore dismissed the complaint as amended.

Ms. Cole timely appealed.

## II

## DISCUSSION

### A. Standard of Review

We review the district court's decision to grant a motion to dismiss de novo. *See American United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 925-26 (7th Cir. 2003). We consider the allegations in the light most favorable to the nonmoving party, Ms. Cole, and take all well-pleaded facts and allegations as true. *See Delgado v. Jones*, 282 F.3d 511, 575 (7th Cir. 2002). "A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### B. Firm Offer of Credit

As set forth above, the district court dismissed Ms. Cole's second amended complaint on the ground that the offer contained in the flyer was a "firm offer of credit" for purposes of the FCRA. In its view, because the extension of a "firm offer of credit" was a permissible reason for accessing an individual's information under the FCRA, the defendants' actions did not violate the FCRA. Our consideration of the district court's dismissal begins with the statute itself.

### 1.  Applicable Provisions of the FCRA

#### a.  the statutory definition in context

In interpreting the FCRA provisions applicable to Ms. Cole's claims, we must keep in mind the "language and design of the statute as a whole." *Milwaukee Gun Club v. Schulz*, 979 F.2d 1252, 1255 (7th Cir. 1992). We must "construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant; we favor the more reasonable result; and we avoid construing statutes contrary to the clear intent of the statutory scheme." *In re Merchants Grain, Inc.*, 93 F.3d 1347, 1353-54 (7th Cir. 1996).

Section 1681 sets forth the congressional findings that prompted the adoption of the FCRA as well as the purpose of the Act. In this section, Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies. *See* 15 U.S.C. § 1681(a)(4). Specifically, Congress stated: "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *Id.*; *see also Trans Union Corp. v. FTC*, 81 F.3d 228, 234 (D.C. Cir. 1996) ("Along with accuracy of collected information, a major purpose of the Act is the privacy of a consumer's credit-related data."); Amicus Br. at 15-16. One means by which Congress effectuated this purpose was prohibiting the release of consumer credit reports unless the release occurs for one of the permissible purposes set forth in 15 U.S.C. § 1681b(a). Section 1681b(a) in turn provides that, "[s]ubject to subsection (c) of this section, any consumer agency may furnish a consumer report under the following circumstances and no other . . . ."

Many of the enumerated permissible purposes set forth in § 1681b are transactions initiated by the consumer; these purposes therefore do not create significant privacy concerns.[5] The subsection does set forth, however, limited situations in which a consumer credit agency may furnish a consumer report even though the consumer has not initiated or authorized the release. One such instance is when a credit or insurance provider is extending the consumer a "firm offer of credit." § 1681b(c)(1)(B)(i). In allowing consumer agencies to release information for the purpose of a "firm offer of credit," Congress "balance[d] any privacy concerns created by pre-screening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process." *See* S. Rep. No. 103-209, 13 (1993). "In exchange for allowing credit and insurance providers to obtain lists based on more sensitive information . . . the bill requires that the credit or insurance provider make a 'firm offer,' as defined in section 101 of the Committee bill, of credit or insurance to all consumers on the list." *Id.* at 14. As one of our sister circuits has observed, "Congress apparently believe[d] that people are more willing to reveal personal information in return for guaranteed offers of credit than for catalogs and sales pitches." *Trans Union Corp. v. FTC*, 267 F.3d 1138, 1143 (D.C. Cir. 2001).

### b. the statutory definition

The term "firm offer of credit" is defined in the FCRA as "any offer of credit or insurance to a consumer that will be

---

[5] For example, when the consumer applies for credit, employment, insurance or a license, the consumer reporting agency may release the consumer's report. *See* 15 U.S.C. § 1681b(a)(3)(A)-(F).

honored if the consumer is determined, based on informa-
tion in a consumer report on the consumer, to meet the
specific criteria used to select the consumer for the offer." 15
U.S.C. § 1681a(*l*). The statute provides that the offer may be
conditioned on three specific requirements. First, the
creditor may apply additional pre-selected criteria bearing
on the consumer's creditworthiness. *See* § 1681a(*l*)(1).
Second, the firm offer may be conditioned on verification
"that the consumer continues to meet the specific criteria
used to select the consumer for the offer." § 1681a(*l*)(2).
Finally, the offer may be conditioned on the consumer's
furnishing any collateral that was both established before
the selection of the consumer for the offer and disclosed
to the consumer in the offer. *See* § 1681a(*l*)(3).

### 2. Application

Ms. Cole maintains that the offer contained in the flyer
was merely a sham to justify obtaining her credit report. She
argues that, given the insignificant amount of credit, the
offer was not made with the expectation that a significant
number of consumers would accept the offer, and, therefore,
it cannot constitute a "firm offer of credit" for purposes of
the statute.[6]

---

[6]  Ms. Cole also contends that the offer was too vague, ambiguous
and inconsistent to constitute an offer under Illinois law. We
believe that Ms. Cole's reliance on state law is misplaced. The
meaning of an undefined term in the FCRA, a federal statute, is a
question of Congress' intent. *See Mississippi Band of Choctaw
Indians v. Holyfield*, 490 U.S. 30, 43 (1989). There is no question
that Congress intended a uniform application of the meaning
(continued...)

The defendants counter that the lynchpin of "firm offer of credit" is that some amount of credit—however small—is guaranteed. According to the defendants, "the FCRA does not require a minimum amount" of credit to be offered and therefore the " 'preapproval could be for any amount, perhaps even as low as $1.' " Appellees' Br. at 16-17 (quoting *Sampson v. Western Sierra Acceptance Corp.*, 2003 WL 21785612, at *2 (N.D. Ill. Aug. 1, 2003)). Thus, in the defendants' view, the fact that the offer was only for $300 does not take it outside of the statutory definition.

We believe that the reading of "firm offer of credit" suggested by the defendants, and accepted by the district court, eviscerates the explicit statutory purpose of protecting consumer data and privacy. *See* 15 U.S.C. § 1681(a)(4). Indeed, such a definition would permit anyone to gain access to a sea of sensitive consumer information simply by offering some nominal amount of guaranteed credit. The statutory scheme of the FCRA makes clear that a "firm offer" must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy. A definition of "firm offer of credit" that does not incorporate the concept of value to the consumer upsets the balance

---

[6] (...continued)
of "firm offer of credit." It provided: "Notwithstanding any definition of the term 'firm offer of credit or insurance' (or any equivalent term) under the laws of any State, the definition of that term contained in section 1681(a)(1) of this title shall be construed to apply in the enforcement and interpretation of the laws of any State governing consumer reports." 15 U.S.C. § 1681t(c). If, as suggested by Ms. Cole, the meaning of "firm offer of credit" varies from state to state based on each state's definition of an "offer," Congress' intent that the FCRA have uniform meaning and application among the states would be thwarted.

Congress carefully struck between a consumer's interest in privacy and the benefit of a firm offer of credit for all those chosen through the pre-screening process. From the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation. It is clear that Congress did not intend to allow access to consumer credit information "for catalogs and sales pitches." *Trans Union Corp.*, 267 F.3d at 1143. Such importuning simply—and understandably—is not among the permissible reasons for which a credit agency may disclose a consumer's credit information. *See Trans Union Corp.*, 81 F.3d at 234; *see also Tucker v. Olympia Dodge of Countryside, Inc.*, 2003 WL 21230604, at *3 (N. D. Ill. May 28, 2003).[7] Defining a firm offer of credit as merely any offer that will be honored elevates form over substance, "exalt[s] artifice above reality and . . . deprive[s] the statutory provision in question of all serious purpose." *Gregory v. Helvering*, 293 U.S. 465, 470

---

[7]   The FTC also has recognized the need for an offer to have value in order to preserve the balance struck by Congress. In explaining its interpretation of "prescreening" contained in the official commentary to the FCRA, it stated:

> [T]he prescreening process is offset by a substantial potential gain—an actual offer of credit. However, it also believes that a liberalized interpretation that would permit the creditor to send only promotional material to the "survivors" of the prescreen would not be justified because the consumers would not be receiving the same clear benefit in exchange for the creditor's use of their credit histories in the prescreening process.

Federal Trade Comm'n, Statement of General Policy: Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18,804, 18,807 (May 4, 1990) (Supplemental Information).

(1935); *see also Clark v. Rent-It-Corp.*, 685 F.2d 245, 248 (8th Cir. 1982) (stating that the Truth In Lending Act ("TILA") "is remedial in nature, and the substance rather than the form of credit transactions should be examined in cases arising under it" (internal quotation marks and citation omitted)).

We believe therefore that the district court's focus on whether the offer would have been honored was inappropriately narrow.[8] Although the statute requires that an offer

_____

[8] Other cases in the district courts of this circuit also have treated whether an offer is guaranteed as the *sine qua non* of a "firm offer of credit." For example, in *Sampson v. Western Sierra Acceptance Corp.*, 2003 WL 21785612, at *2 (N.D. Ill. Aug. 1, 2003), the district court reasoned:

> Defendants' certificate contains no minimum amount of credit and only states the holder is "preapproved for an auto loan" and must call to find out the amount. Theoretically, this pre-approval could be for any amount, perhaps even as low as $1. Nonetheless the FCRA "does not require a 'firm offer' to be in any particular amount," *see Tucker* [*v. Olympia Dodge of Countryside, Inc.*, 2003 WL 21230604, at *3 (N.D. Ill. May 28, 2003)], and the statute merely states that firm offer of credit is "any offer . . . that will be honored . . . ." 15 U.S.C. § 1681a(1). Plaintiffs do not allege that defendants failed to honor the offer of credit, thus plaintiffs failed to state a claim.

*Id.* at *2. For the reasons set forth in this opinion, "[t]he fact that the creditor would honor such an offer—even if no rational consumer would redeem it—should not provide the creditor with a permissible purpose for obtaining credit information." Amicus Br. at 18. "If the important privacy protections of the FCRA are to retain their vitality, users of consumer report information must not be permitted to evade them through the use of sham offers of credit that have no appreciable economic value to consumers." *Id.*

(continued...)

of credit be honored in order to qualify as a "firm offer of credit," *see* 15 U.S.C. § 1681a(*l*) ("The term 'firm offer of credit or insurance' means any offer of credit or insurance to a consumer that will be honored . . . ."), this element is not dispositive. To determine whether the offer of credit comports with the statutory definition, a court must consider the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question. If, after examining the entire context, the court determines that the "offer" was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit.

In making this assessment, one important term for courts to evaluate is the amount of credit to be extended. However, neither a creditor nor a debtor considers the amount of credit in a vacuum; both must know the other terms attached to that credit to determine whether it is advantageous to extend or to accept the offer. The terms of an offer, such as the rate of interest charged, the method of computing interest and the length of the repayment period, may be so onerous as to deprive the offer of any appreciable value.[9]

---

[8] (...continued)
at 17.

[9] The FTC shares our view that there "are a variety of factual issues that are relevant to th[e] inquiry" of whether the flyer constitutes a "bona fide firm offer of credit." Amicus Br. at 21. According to the FTC, the following are all considerations in this inquiry:

What type of credit was offered? What would be the terms of the credit? Did the creditor have a business plan in place that fully complied with the requirements for firm offers of credit under Section § 1681a(*l*), including establishing in advance

(continued...)

Here, the pleadings reasonably support the plaintiff's claim that the offer was a sham made to justify access to the consumer credit reports. First, it is far from clear from the flyer that the offer of credit will be honored even if the consumer meets the conditions set forth in the offer. The offer initially states that, "[i]n any event you are guaranteed to receive a credit line of at least three hundred dollars for the purchase of a vehicle, GRSI, Coral Springs, FL." R.37, Ex.A. However, later within the offer, the following language appears: "Guaranteed approval is neither express nor implied." Therefore, the language of the flyer itself creates a question whether the offer of credit will be honored.

Additionally, the relatively small amount of credit combined with the known limitations of the offer—that it must be used to purchase a vehicle—raises a question of whether the offer has value to the consumer. Finally, several material terms are missing from the offer. Although the offer indicates that interest rates may vary from 3.0 to 24.9 percent, the precise rate of interest for a particular consumer is unknown. Furthermore, the offer does not specify the method by which interest will be compounded nor the repayment period, although these factors are essential considerations in determining whether the offer has any value. These missing terms render it impossible for a court

---

[9] (...continued)
the criteria for the credit? Did any consumers apply for, or actually get, this credit? If not, why not? For example, was the offer so unintelligible—were the terms so inherently confusing, contradictory or buried in fine print—that no one applied? Was there any guarantee? Was the credit offer so trivial, or were there so many conditions, that it was not meaningful? . . .

*Id.*

to determine from the pleadings whether the offer has value. Because the allegations of the complaint state facts that would permit Ms. Cole to establish that the communication had no real value, the district court erred in dismissing Ms. Cole's complaint.

## C. Clear and Conspicuous Statement

Ms. Cole also contends that, even if the flyer contains a firm offer of credit, it nonetheless violates the FCRA for failing to make required disclosures in a clear and conspicuous manner. The district court granted the defendants' Rule 12(b)(6) motion with respect to this claim without discussion. Whether the disclosures contained in the flyer are clear and conspicuous is a matter of law that we review de novo. *See Lifanda v. Elmhurst Dodge, Inc.*, 237 F.3d 803, 805-06 (7th Cir. 2001); *Smith v. Check-N-Go of Illinois, Inc.*, 200 F.3d 511, 514 (7th Cir. 1999).[10]

---

[10] We note in passing that, under these circumstances, a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) was improper. We previously have held in reviewing a TILA claim that "allegations that disclosures are not 'clear and conspicuous' state a claim upon which relief may be granted." *Lifanda v. Elmhurst Dodge, Inc.*, 237 F.3d 803, 805-06 (7th Cir. 2001) (citing *Smith v. Check-N-Go of Illinois, Inc.*, 200 F.3d 511, 514 (7th Cir. 1999)). "The possibility that the allegation is false—even that attachments to the complaint demonstrate its falsity— does not mean that the complaint fails to state a claim." *Check-N-Go*, 200 F.3d at 514. However, the presence of the attachment to the complaint authorizes "the district court to grant judgment on the pleadings under Rule 12(c) . . . ." *Id.* Therefore, because Ms. Cole alleged that the disclosures were not clear and conspicuous, she stated a

(continued...)

## 1. Disclosures Required by the FCRA

The FCRA provides that any person using a consumer report to make a firm offer of credit "shall provide with each written solicitation made to the consumer regarding the transaction a *clear and conspicuous* statement" disclosing statutorily required information. 15 U.S.C. § 1681m(d) (emphasis added).[11] The notice must inform the consumer that: (1) the recipient's consumer credit report was used in determining who should be sent the offer; (2) the consumer was selected because the consumer satisfied certain criteria; (3) the offer may not be extended if the consumer does not continue to meet the criteria bearing on creditworthiness or provide the required collateral; (4) the consumer has the right to opt out of future offers by prohibiting the unsolicited use of information contained in their consumer file; and (5) the consumer may exercise that right by calling

---

[10] (...continued)
claim under Rule 12(b)(6), and the district court should have referenced Rule 12(c) in entering judgment on this claim. However, regardless of whether the complaint was dismissed pursuant to Rule 12(b)(6) or judgment was entered pursuant to Rule 12(c), our review is de novo. *See Lifanda*, 237 F.3d at 806.

[11] The requirements of clear and conspicuous disclosures are only triggered if a valid firm offer was extended. Section 1681m(d) provides that "[a]ny person who uses a consumer report on any consumer in connection with any credit or insurance transaction that is not initiated by the consumer, that is provided to that person under section 1681b(c)(1)(B) of this title [a firm offer of credit or insurance], shall provide with each written solicitation made to the consumer regarding the transaction" "a clear and conspicuous statement" of the required disclosures. Consequently, if a solicitation is not provided pursuant to § 1681b(c)(1)(B), i.e., is not a firm offer of credit, § 1681m(d) is not applicable. *See* Amicus Br. at 24, n.9.

a specified toll-free number or by contacting the credit agency at a given address. See *id*.

The FCRA does not define the term "clear and conspicuous," and, in fact, there is little case law interpreting the term as used in § 1681m. *See Sampson*, 2003 WL 21785612, at *3 (commenting on the lack of case law defining "clear and conspicuous" in the FCRA). However, the term "clear and conspicuous" is a staple in commercial law. *See Channel v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 382 (7th Cir. 1996) (noting that neither the Consumer Leasing Act nor regulations defined the term but that the "words were staples of commercial law"). Accordingly, courts that have addressed the term in the FCRA often have turned to cases involving the Uniform Commercial Code ("UCC") and TILA for guidance. *See Stevenson v. TRW Inc.*, 987 F.2d 288, 295 (5th Cir. 1993) (defining "clear and conspicuous" language used in 15 U.S.C. § 1681i(d) with reference to TILA and UCC cases); *Tucker v. New Rogers Pontiac, Inc.*, 2003 WL 22078297, at *4 (N.D. Ill. Sept. 9, 2003) (addressing the phrase in 15 U.S.C. § 1681m(d)(1) by relying on a TILA decision); *Sampson*, 2003 WL 21785612, at *3-4 (relying on cases from the Fair Debt Collection Practices Act, TILA and other sections of the FCRA to interpret the term in § 1681m).

For example, in *Stevenson*, 987 F.2d 288, the only federal court of appeals case to consider the meaning of "clear and conspicuous" in the context of the FCRA, the Fifth Circuit looked to how the term had been interpreted for purposes of the UCC. That court stated:

> The term "conspicuous" has been construed most frequently with the Uniform Commercial Code § 2-316(2), which requires that any exclusion or modification of the implied warranty of merchantability be conspicuous, and that any exclusion or modification

of the implied warranty of fitness for a particular purpose be made in a conspicuous writing. A contract's warranty disclaimer satisfies the conspicuous require- ment when it is printed in all capital letters, when it appears in a larger type than the terms around it, or when it is in a larger and boldface type. Likewise, a disclaimer in boldface type, printed in all capitals on the face of the warranty above the buyer's signature meets the definition of conspicuousness. A disclaimer is not conspicuous, however, when it is printed in small print on the back of the document, when it is the same size and typeface as the terms around it, or when it is not in boldface or capital lettering.

*Stevenson*, 987 F.2d at 296 (internal citations omitted). After reviewing these standards, the court evaluated the notice at issue to determine whether it was conspicuous:

TRW's notice of the consumer's right to have corrected reports sent to creditors was printed in the same size type as the other terms in the same paragraph. The paragraphs around the notice appeared in larger, boldface type. Even if Stevenson read the back of his first credit report, there was nothing to draw his atten- tion particularly to the statutory notice. We conclude that the district court did not err in finding that TRW negligently violated the notice requirement of § 1681i(d).

*Id.*[12]

---

[12] *See also Sampson*, 2003 WL 21785612, at *4 (looking to TILA, UCC and Fair Debt Collection Practice Act cases in interpreting §

(continued...)

Like the Fifth Circuit, we believe it is appropriate to draw upon the wealth of UCC and TILA case law in determining the meaning of "clear and conspicuous" under the FCRA. The UCC defines conspicuous as "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." U.C.C. § 1-201(10). When evaluating a disclaimer of warranty against this standard, we have looked to how many times a customer was made aware of the notice, whether the notice was on the front or back of the document in question, whether the language of the notice was emphasized in some way (such as by bolding the text or by employing all capitals) and whether the notice was set off from the rest of the document so as to draw attention to it. *See H.B. Fuller Co. v. Kinetic Sys., Inc.*, 932 F.2d 681, 689 (7th Cir. 1991).

We also have considered the definitions of "clear" and "conspicuous" with respect to TILA. At issue in *Lifanda*, 237 F.3d at 805-06, was whether a disclosure of the term of insurance and the amount of the premium was clear and conspicuous. We stated:

> The term of the insurance is set forth in the Auto Theft Registration form, but is set forth in the smallest type on the form, which is so minuscule as to be barely legible.

---

[12] (...continued)
1681m and finding that disclosures under § 1681m were *not* conspicuous when they were on the back with no reference on the front and in six-point font where the rest of the text ranged from 10.5 to 28-point font); *Tucker v. New Rogers Pontiac, Inc.*, 2003 WL 22078297, at *4 (N.D. Ill. Sept. 9, 2003) (referencing TILA applications of "clear and conspicuous" and concluding that disclosures that were "not on the reverse side" but that were barely legible were not conspicuous).

> Although the district court notes that TILA does not mandate any minimum type size, it simply does not follow that type size is irrelevant to a determination of whether a disclosure is "conspicuous." If the term "conspicuous" is to retain any meaning at all, it cannot be met as a matter of law by type disproportionately small to that in the rest of the document, and which is itself barely legible. Far from being conspicuous, the "disclosure" here is quite the opposite.

*Id.* at 808 (internal citation omitted).

The above cases make it clear that there is not one aspect of a notice that necessarily will render it "clear and conspicuous" for purposes of the FCRA. We must consider the location of the notice within the document, the type size used within the notice as well as the type size in comparison to the rest of the document. We also must consider whether the notice is set off in any other way—spacing, font style, all capitals, etc. In short, there must be something about the way that the notice is presented in the document such that the consumer's attention will be drawn to it.

### 2. Application

Turning to the flyer, the required disclosures are condensed into a single paragraph at the very bottom of the flyer. The paragraph consists of nine lines of text that occupy, generously speaking, one inch of space. The font size is no larger than six-point and is the smallest font on the page by several sizes. The notice is not distinct in any way (except in how small it is)—either through color, emphasis

or font style.[13] The remainder of the flyer, however, utilizes all caps, bold, italics and various font sizes to emphasize other information being communicated.

Under any test of conspicuousness, the notice must fail. The type in this disclaimer fairly can be described as disproportionately small compared to the surrounding text; indeed, its size approaches that which cannot be read with the naked eye. The text is the smallest text on a page that is filled with larger type, as well as type that is bolded and italicized. The notice does nothing to draw the reader's attention to this material; to the contrary, the flyer appears to be designed to ensure minimal attention by the reader. Consequently, we must conclude that the district court erred in holding that the defendants' disclosures were clear and conspicuous as a matter of law; indeed, the opposite appears to be the case.[14]

---

[13] The only text in the bottom paragraph that appears in any kind of differentiated type is the phrase "CREDIT CARD DISCLAIMER," which appears in the same font size, but in all capital letters.

[14] The defendants make one last argument that we need address only briefly. They claim that "[t]he FCRA imposes liability for the dissemination of consumer credit reports by consumer reporting agencies, and therefore is not applicable to the defendants, who allegedly merely obtained the Plaintiff's credit report." Appellees' Br. at 23. However, as noted by the FTC and as recognized by every circuit to address the issue, the 1996 amendments to the FCRA included § 1681b(f) which provides: "A person shall not *use or obtain* a consumer report for any purpose unless—(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(continued...)

## Conclusion

For the foregoing reasons, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion. Ms. Cole may recover her costs in this court.

REVERSED and REMANDED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[14] (...continued)
(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification." (emphasis added). Thus, it is clear that the FCRA now imposes liability for using or obtaining a consumer report in violation of the FCRA, not simply for releasing or disseminating a report.

---