In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 06-4337

MARY FORREST,

*Plaintiff-Appellant,*

*v.*

UNIVERSAL SAVINGS BANK, F.A.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 C 445—**Aaron E. Goodstein**, *Magistrate Judge.*

_____

ARGUED SEPTEMBER 11, 2007—DECIDED OCTOBER 25, 2007

_____

Before RIPPLE, MANION, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Mary Forrest filed suit on behalf of herself and a putative class against Universal Savings Bank, N.A. ("Universal") asserting that Universal had violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., by obtaining her credit information for an impermissible purpose. The parties consented to proceed before a magistrate judge, and Universal then filed a motion to dismiss. The magistrate judge granted Universal's motion before a class was certified, and the case was dismissed. Forrest appeals, and we AFFIRM.

I.

Universal Savings Bank, N.A. ("Universal") sent Mary Forrest a letter with other materials notifying her that she was prequalified for a Visa credit card with a 10.99% variable annual percentage rate, no annual fee, and a credit line up to $15,000. The letter also stated that Forrest was qualified to receive a Dell™ Dimension™ 3000 desktop computer, or a comparable or upgraded model, with the card when she "transfer[ed] $5,000 of qualifying balances" and "maintained a balance of $3,500 for at least 18 months" on the card. In the case that Forrest did not have $5,000 to transfer to the credit card, she could request up to $2,500 in cash advances to meet the $5,000 minimum balance. Failure to maintain a $3,500 balance for the designated time period would result in a one-time $500 fee.

In addition to the specific information regarding fees and rate information set out in the letter, the enclosed printed materials also detailed the proposal:

> Upfront Rewards™ and Balance Transfer Information. To establish an account and be eligible for an Upfront Reward™, you must transfer qualifying balances of at least $5,000. You may also combine qualifying balance transfers of at least $2,500 with a special account opening advance of up to $2,500 to bring your balances up to $5,000. If your balance falls below $3,500 at any time during the first 18 months after your account is open, you will be in default and your account will be assessed a one-time fee of $500 (early pay-down fee). See also the TERMS OF OFFER below.

Finally, the printed material stated that "[i]n making this offer to you, we used credit information about you" to determine that "you satisfied the credit eligibility require-

ments for the credit product offered in this mailing. If we determine at the time you respond to the offer that you no longer satisfy the credit eligibility requirements that we previously established and you previously met, we may not extend credit to you."

Forrest did not submit an application to receive Universal's Visa card; rather, she filed suit alleging that Universal willfully violated the FCRA by obtaining her credit information without a permissible purpose because its letter did not make a firm offer of credit. Forrest attached to her complaint a copy of Universal's letter and materials. In response to Forrest's complaint, Universal filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) asserting that it had provided Forrest with a firm offer of credit because the letter disclosed the minimum opening credit line of $5,000, offered something of value, and permissibly conditioned the offer of credit on the consumer meeting pre-established credit and income criteria. Forrest responded that her complaint stated a claim under the FCRA because Universal's letter did not set forth a minimum amount of credit. The district court granted Universal's motion concluding that Universal had extended a firm offer of credit for the reason that the letter clearly stated that it was offering a line of credit, the FCRA does not require that a minimum credit amount must be offered, and the card itself had value. The case was dismissed, and Forrest appeals.

## II.

We review a district court's grant of a motion to dismiss de novo. *Payton v. County of Carroll*, 473 F.3d 845, 847 (7th Cir. 2007) (citations omitted). Taking all facts pleaded

in the complaint as true and construing all inferences in the plaintiff's favor, we review the complaint and all exhibits attached to the complaint. *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) (citations omitted). Where an exhibit and the complaint conflict, the exhibit typically controls. *Id.* A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document. *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (citation omitted). "A complaint should only be dismissed if there is no set of facts, even hypothesized, that could entitle a plaintiff to relief." *Massey*, 464 F.3d at 645.

On appeal, Forrest claims that Universal's letter is not a firm offer of credit under the FCRA because it does not offer a minimum line of credit. She therefore concludes that Universal accessed her credit information in violation of the FCRA.

Under the FCRA, a lender may access and use credit information "in connection with any credit or insurance transaction that is not initiated by the consumer only if . . . the transaction consists of a firm offer of credit or insurance." 15 U.S.C. § 1681b(c)(1)(B)(I). A "firm offer of credit" is "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer except that the offer may be further conditioned . . . ." 15 U.S.C. § 1681a(l). Those conditions include a consumer's eligibility based on the information in his application, verification of continued eligibility, and the consumer furnishing any required collateral for the extension of credit which is disclosed to the consumer in the offer. *Id.*

In order for an offer of credit to constitute a firm offer, its terms "must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy." *Id.* at 726. In sum, in ascertaining whether a letter is a firm offer of credit, we "must determine whether the offer has value as an extension of credit alone." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 955 (7th Cir. 2006). To determine whether a letter has value,

> a court must consider the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question. If after examining the entire context, the court determines that the offer was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit.

*Cole*, 389 F.3d at 728. The amount of credit, including the minimum credit amount, extended by the offer is an important term for courts to evaluate in conjunction with the other terms in ascertaining whether a firm offer has been presented. *Id.* These other terms are also important because they create conditions that establish whether it is advantageous for the creditor to extend or for the consumer to accept an offer, in other words, whether the card has value for the consumer. *Id.*

The sole basis on which Forrest challenges Universal's letter is her claim that it does not constitute a firm offer of credit because it does not contain a minimum amount of credit offered. In response, Universal contends that the minimum amount of credit is $5,000 because the letter indicates that a consumer could not obtain the credit card nor could he receive the free computer without transferring indebtedness of at least $5,000 to the account.

Reviewing its letter and accompanying materials, we conclude that Universal extended Forrest a firm offer of credit. Universal's materials state: "*To establish an account* and be eligible for an Upfront Reward, you must transfer qualifying balances of at least $5,000." (emphasis added). To reach this $5,000 minimum, the card permits the consumer to obtain up to $2,500 cash back to apply to reaching the minimum, and exempts from fees the initial transactions to set up the account. Thus, as set forth in terms of Universal's materials, the $5,000 balance is a condition precedent to establishing a Universal Visa account, and this necessitates that the card have a $5,000 minimum credit line to cover the transferred debt. In addition, the letter provides value to the consumer through the offer of a Visa credit card; the card may be used anywhere Visa is accepted and is not restricted to the purchase of a particular product. *Cf. Cole*, 389 F.3d at 728 (concluding that there was no firm offer where the "relatively small amount of credit combined with the unknown limitations of the offer—that it must be used to purchase a vehicle—raises questions of whether the offer has value to the consumer."). The letter and accompanying materials set forth the card's terms, including the annual percentage rate, balance calculation method, finance charges, and fees, so that a consumer is able "to determine whether it is advantageous . . . to accept the offer." *Id.* Further, there is no annual fee, and none of the fees and rates is a significant amount.

Forrest contends that other language negates the view that $5,000 was the credit minimum. Specifically, Forrest points to the passage in Universal's letter which stated, "Supplies are limited—act now before someone beats you to this valuable $600 reward" and "P.S. LIMITED AVAIL-

ABILITY." However, the offer of a free computer was a bonus above and beyond the offer of the card itself, and the availability of the computer did not affect the value of the card to the consumer. While there are numerous references to the $5,000 transfer requirement to receive the computer, these references do not conflict with or rebut the same initial requirement to transfer $5,000 to open an account with Universal for a Visa card. Therefore, we conclude Universal's "offer has value as an extension of credit alone," *Murray*, 434 F.3d at 955, and "offers value to the consumer," *Perry v. First Nat'l Bank*, 459 F.3d 816, 826 (7th Cir. 2006).

Forrest also points to Universal's statement that the consumer's "initial credit limit will depend on whether you meet our established income and credit standards." Forrest asserts that this statement would lead a reasonable consumer to believe that Universal is not offering a minimum line of credit. Universal stated that the "initial credit *limit*," not the credit minimum, will be dependent on this verification, and this verification does not modify the $5,000 minimum credit line necessitated by the opening of an account. Moreover, the FCRA specifically permits that a firm offer be conditioned upon verification that the consumer continues to meet the qualifications of the offer "by using information in a consumer report on the consumer, information in the consumer's application for the credit or insurance, or other information bearing on the credit worthiness or insurability of the consumer." 15 U.S.C. § 1681a(l)(2)(a). The FCRA also permits verification "of the information in the consumer's application for the credit or insurance, to determine that the consumer meets the specific criteria bearing on credit worthiness or insurability." 15 U.S.C. § 1681a(l)(2)(b).

Forrest also contends that the district court made imper-missible inferences by supplying a minimum line of credit which is not offered in the letter when ruling on Univer-sal's motion to dismiss. The district court permissibly re-viewed Universal's letter and materials which were attached to Forrest's complaint and ultimately decided that "[t]here is no ambiguity in the fact that Universal was offering a line of credit." Because this determination was based on the language of the cover letter and the other materials in the mailing, we conclude that the district court did not run afoul of the section 12(b)(6) standard in granting Universal's motion. *See Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007) ("Any written instrument, such as an arbitration award, that is attached to a complaint is considered part of that complaint.") (citations omitted). Moreover, because in cases such as this we review questions of law de novo, any inferences the district court made are irrelevant because we conclude for the aforementioned reasons that Universal's mailing constitutes a firm offer of credit.

### III.

Considering the entirety of Universal's offer, including its minimum credit line, we conclude that it presented Forrest with an offer of value. Accordingly, Universal properly accessed Forrest's credit information in provid-ing Forrest with a firm offer of credit, and the district court properly granted Universal's motion to dismiss. We AFFIRM.

A true Copy:

    Teste:

 

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*