## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 25 2018, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Shaun T. Olsen
Olsen Legal Group Ltd.
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Michael V. Knight
Barnes & Thornburg LLP
South Bend, Indiana

Alice J. Springer
Barnes & Thornburg LLP
Elkhart, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Paresh Shah and Shobhana Shah,

*Appellants-Defendants-Counterclaim Plaintiffs,*

*v.*

Wells Fargo Bank, N.A.,

*Appellee-Plaintiff-Counterclaim Defendant.*

September 25, 2018

Court of Appeals Case No. 18A-MF-629

Appeal from the Lake Superior Court

The Honorable John M. Sedia, Judge

Trial Court Cause No. 45D01-1502-MF-49

**Bradford, Judge.**

# Case Summary

[1] In 2007, Paresh and Shobhana Shah borrowed $500,000.00 from TCF National Bank, a loan secured with a mortgage on property they owned. TCF's rights in the transaction have since been transferred to Wachovia Mortgage FSB and then to Wells Fargo Bank, N.A. (TCF, Wachovia, and Wells Fargo will henceforth collectively be referred to as "the Bank"). In 2009, after some disputes, the Shahs and the Bank executed a modification agreement ("the Modification Agreement"), which increased the principal and imposed a new monthly payment. From the beginning and for two years afterwards, the Bank issued incorrect billing statements to the Shahs, who never made a single payment pursuant to the Modification Agreement.

[2] In 2015, the Bank filed a foreclosure action, and the Shahs filed counter-claims for, *inter alia*, breach-of-contract. Both sides moved for summary judgment. The Bank argued that the Shahs' breach-of-contract claims were time-barred claims that the Bank had violated the federal Fair Credit Reporting Act ("the FCRA"), while the Shahs argued that their claims actually arose under state contract law. In December of 2017, the trial court entered summary judgment in favor of the Bank and against the Shahs on their counter-claims. The Shahs argue that the trial court erred in granting the Bank's summary judgment motion and denying theirs. Because we disagree, we affirm.

# Facts and Procedural History

[3] The Shahs own property located in Munster ("the Property").  On June 7, 2007, the Shahs borrowed $500,000.00 pursuant to a promissory note from the Bank, which loan was secured by a mortgage on the Property.  On April 11, 2008, the Shahs refinanced the loan by borrowing $555,000.00 pursuant to a promissory note ("the Note") and executing a mortgage in favor of the Bank ("the Mortgage").

[4] A dispute arose over the Note and Mortgage which led the Shahs to file a complaint in Illinois state court, which was later removed to federal court.  The Shahs' federal complaint was resolved by, *inter alia*, execution of the Modification Agreement dated September 20, 2009.  The Modification Agreement, which was signed by both Shahs on September 23, 2009, modified the terms of the Note and Mortgage by increasing the principal owed by the Shahs to $580,000.00, which was to be retired by 344 monthly payments of $3246.99 to start on October 15, 2009.  On September 29, 2009, the Bank wrote the Shahs asserting that "[a]ll necessary documentation was submitted to the credit reporting agencies to remove all derogatory information reported on your credit file."  Appellants' App. Vol. II p. 228.  The Modification Agreement did not obligate the Bank to take measures to clear the Shahs' credit record.

[5] For approximately two years, the Bank sent the Shahs incorrect monthly billing statements, beginning with a statement dated October 3, 2009, indicating that a minimum payment of $47,371.04 was due, of which $44,855.64 was past due.  The Modification Agreement contained no requirement that the Bank provide the Shahs with a monthly statement and provided that "[t]his Agreement can

only be changed, amended, or modified in a writing signed by the Lender and Borrower." Appellants' App. Vol. II p. 65. It is undisputed that the Shahs never made even a single payment pursuant to the Modification Agreement, whether in the correct amount or the amount indicated in the incorrect monthly statements.

[6] The Bank filed a foreclosure complaint on February 27, 2015. On April 28, 2015, the Shahs answered the Bank's complaint, which answer was later amended to include counter-claims against the Bank. The Shahs' counter-claims against the Bank were that the Modification Agreement was valid and enforceable but that the Bank failed to apply and adhere to it, the Bank breached the Modification Agreement, and the Bank's acts and omissions relative to applying the Modification Agreement were negligent.

[7] On August 22, 2017, the Bank moved for summary judgment on the Shahs' counter-claims. The Bank argued, *inter alia*, that the Shahs' contention that it breached the Modification Agreement was really a claim that it had violated provisions of the FCRA, a claim that was time-barred. On October 9, 2017, the Shahs responded to the Bank's summary judgment motion and cross-moved for summary judgment, acknowledging that they were in default of the Modification Agreement but specifically denying making a claim pursuant to the FCRA. On December 1, 2017, the trial court held a hearing on the motions for summary judgment. The Shahs conceded during the hearing that the Bank was entitled to judgment as a matter of law on the negligence counter-claim.

On December 12, 2017, the trial court entered summary judgment in favor of the Bank and against the Shahs on the Shahs' remaining counter-claims.

# Discussion and Decision

[8] When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Merchs. Nat'l Bank*, 741 N.E.2d at 386. To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.* The Shahs argue that the trial court erred in (1) not concluding that the Modification Agreement is valid and enforceable against the parties and (2) concluding that there is no genuine issue of material fact as to whether the Bank breached the Modification Agreement.

# I. Whether the Modification Agreement is Enforceable

The Shahs seem to claim that the trial court determined that the Modification Agreement was not enforceable. We need spend little time on this claim, as the ruling that the Shahs breached the Modification Agreement is necessarily premised on a conclusion that the Modification Agreement bound both parties. Because the trial court has already ruled that the Modification Agreement was enforceable against the parties, we need not address this claim further.

# II. Whether There is a Genuine Issue of Material Fact as to Whether the Bank Breached the Modification Agreement

The Shahs acknowledge that they have failed to make even one payment pursuant to the Modification Agreement. Default on a mortgage loan can be established by designating "into evidence the demand note and the mortgage[,]" *Creech v. LaPorte Prod. Credit Ass'n*, 419 N.E.2d 1008, 1012 (Ind. Ct. App. 1981), and evidence, beyond a mere conclusory statement, of default. *See McEntee v. Wells Fargo Bank, N.A.*, 970 N.E.2d 178, 183 (Ind. Ct. App. 2012). That said, the Shahs argue that the Bank breached the Modification Agreement first. The Shahs' argument is based on what it alleges are violations of the FCRA by the Bank, namely, making false representations about the amount of the Shahs' debt *via* the inaccurate billing statements and allegedly providing false information to credit agencies.

> Congress [has] made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained

by consumer reporting agencies. *See* 15 U.S.C. § 1681(a)(4). Specifically, Congress stated: "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *Id.*; *see also Trans Union Corp. v. FTC*, 81 F.3d 228, 234 (D.C. Cir. 1996) ("Along with accuracy of collected information, a major purpose of the Act is the privacy of a consumer's credit-related data.")[.]

*Cole v. U.S. Capital*, 389 F.3d 719, 725 (7th Cir. 2004).

[11]   The Shahs acknowledge that any claim they could have brought pursuant to the FCRA is time-barred.[1]   The Shahs, however, insist that their claims are not actually FCRA claims but, rather, are state-law claims that the Bank breached the Modification Agreement by violating provisions of the FCRA, which it argues was essentially incorporated into the Modification Agreement by operation of law.   The Bank counters by arguing that the Shahs' breach-of-contract claims are, in fact, FCRA claims that are preempted by the FCRA and so are time-barred.   We agree with the Bank.

---

[1]  It seems clear that the Shahs could have pursued FCRA claims in the Indiana state court if they had timely filed them.  The FCRA provides, in part, as follows:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of--
>
> > (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
> >
> > (2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p.

[12] Federal preemption of state laws is a well-settled proposition:

> Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; … any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Thus, since our decision in *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427, 4 L. Ed. 579 (1819), it has been settled that state law that conflicts with federal law is "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S. Ct. 2114, 2128, 68 L. Ed. 2d 576 (1981). Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by … Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152, 91 L. Ed. 1447 (1947). Accordingly, "'[t]he purpose of Congress is the ultimate touchstone'" of pre-emption analysis. *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S. Ct. 1185, 1189, 55 L. Ed. 2d 443 (1978) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S. Ct. 219, 222, 11 L. Ed.2d 179 (1963)).

*Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992).

[13] The FCRA's preemption clause provides that "[n]o requirement or prohibition may be imposed under the laws of any State" with respect to several enumerated areas covered by the FCRA. 15 U.S.C. § 1681t(b). While it is true that not all state-law claims based on credit-reporting malfeasance are barred, "FCRA explicitly preempts state-law claims alleging violations of the federal act." *Todd v. Franklin Collection Serv., Inc.*, 694 F.3d 849, 852 (7th Cir. 2012) (citing 15 U.S.C. § 1681t(b)(1)(F); *Purcell v. Bank of Am.*, 659 F.3d 622, 623–25 (7th Cir. 2011)). The Shahs contend that the Bank violated its duties to (1) not make false representations about the character, amount, or legal status of the

Shahs' debt pursuant to 15 U.S.C. § 1692(e) and (2) provide accurate information to others, including credit reporting agencies pursuant to 15 U.S.C. § 1681s-2(a). Appellants' Br. pp. 24–25. These allegations are explicit claims that the Bank violated the FCRA and so are preempted and cannot form the basis of a claim under state law. *See Todd*, 694 F.3d at 852.

[14] The Shahs, citing to *Cipollone*, nonetheless argue that their claims are not preempted because they arise from an agreement between them and the Bank and not from a requirement or prohibition imposed by state law. In *Cipollone*, the son of a deceased smoker pursued state-court claims against Liggett, a cigarette manufacturer, including a breach-of-express-warranty claim. 505 U.S. at 509–10. Liggett pointed to the preemption provision of the Public Health Cigarette Smoking Act of 1969, which is similar to the FCRA's and provided that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." *Id.* at 515 (citation omitted). A plurality of the United States Supreme Court concluded that breach-of-warranty claims were not barred because they did not arise from a "requirement or prohibition … imposed under State law[,]" but, rather, from an alleged express warranty from the manufacturer to the consumer. *Id.* at 526–27.

[15] Noting the similarity between the preemption language in *Cipollone* and the FCRA's preemption language, the Shahs argue that their claims are based on the alleged violation of duties that arose under the Modification Agreement.

To the extent that the Bank owed those duties to the Shahs, there is no getting around the fact that those duties originally arose from and were imposed by the FCRA. The Modification Agreement itself imposes no obligation on the Bank to either issue accurate billing statements or to issue accurate information about the Shahs' credit history. To the extent that the Bank has these obligations, they arise by operation of the FCRA. The Shahs' reliance on *Cipollone* is unavailing, as is their attempt to recast their claim as a contract claim in order to circumvent the FCRA's statute of limitations.

[16] The judgment of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.