Michael W. PUTKOWSKI, et al., Plaintiffs,

v.

IRWIN HOME EQUITY CORPORATION, et al., Defendants.

No. C 05–3289 PJH.

United States District Court, N.D. California.

March 23, 2006.

J. Preston Turner, Virginia Barnhart, Pope & Hughes, Towson, MD, Tomio B. Narita, Jeffrey A. Topor, Wineberg, Simmonds & Narita LLP, San Francisco, Counsel for Defendants.

Gail Killefer, Esq. (California Bar No. 157248), San Francisco, Terry Smiljanich (Florida Bar No. 145359), Kathleen Clark Knight (Florida Bar No. 0047120), James, Hoyer, Newcomer & Smiljanich, P.A., Tampa, FL, Douglas Bowdoin (Florida Bar No. 310360), Douglas Bowdoin, P.A., Orlando, FL, Counsel for Plaintiffs.

## ORDER GRANTING MOTION TO DISMISS

HAMILTON, District Judge.

Defendants' motion to dismiss the second amended complaint came on for hearing before this court on February 8, 2006. Plaintiffs appeared by their counsel Kathleen Clark Knight and Gail Killefer, and defendants appeared by their counsel Virginia W. Barnhart. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motions as follows and for the reasons stated at the hearing.

## INTRODUCTION

This is a proposed class action alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"). Plaintiffs Michael W. Putkowski ("Putkowski") and Nikki Childress ("Childress") filed this action on August 12, 2005, against defendants Irwin Home Equity Corporation and Irwin Union Bank and

Trust Company ("Irwin"). Plaintiffs filed the second amended complaint ("SAC") on December 23, 2005.

In the SAC, plaintiffs allege violations of two sections of the FCRA, and seek statutory and punitive damages, and declaratory and injunctive relief. Irwin now moves to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Irwin also argues that it is entitled to judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).

## BACKGROUND

Under the FCRA, consumer agencies are authorized to furnish consumer reports[1] only for certain "permissible purposes." One such purpose is the use of the information "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer." 15 U.S.C. § 1681b(a)(3). If the credit transaction is not initiated by the consumer, the consumer agency is further restricted, and may issue a credit report only if, among other things, "the transaction consists of a firm offer of credit . . . ." See 15 U.S.C. § 1681b(c)(1)(B)(i), § 1681b(f). A "firm offer of credit" is "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based upon information in a consumer report on the consumer, to meet specific criteria used to select the consumer for the offer . . ." 15 U.S.C. § 1681a(1).

In addition, any person who uses a consumer report on any consumer in connec-

---

[1]. A consumer report is

any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for -

(A) credit or insurance to be used primarily for personal, family, or household purposes . . .

15 U.S.C. § 1681a(d)(1).

tion with a credit transaction that is not initiated by the consumer is required to disclose to the consumer that: (1) consumer credit reports were used to determine who should receive the credit offer; (2) the consumer was selected because she satisfied certain criteria; (3) if the consumer does not continue to meet the criteria for a finding of creditworthiness or fails to provide the required collateral, then the offer may not be extended; (4) the consumer may opt out of future credit offers by prohibiting the unsolicited use of information contained in her credit file; and (5) the consumer may exercise that right by calling a given toll-free number or by contacting the credit agency at a stated address. *See* 15 U.S.C. 1681m(d). The above information must be "presented in such format and in such type size and manner as to be simple and easy to understand." *Id.*

Plaintiffs assert that Irwin obtained a consumer report on Putkowski on May 5, 2005, that Putkowski did not initiate any transactions related to that consumer report, that Putkowski did not authorize the consumer reporting agency from which Irwin obtained the report to supply the consumer report to Irwin, and that Irwin obtained the consumer report without Putkowski's consent or knowledge. Plaintiffs claim that after Irwin obtained the consumer report, it mailed Putkowski one of Irwin's standardized written solicitations for a home equity line of credit. A copy of the mailer sent to Putkowski is attached to the SAC as Exhibit B.

The mailer offered "a revolving line of credit secured by owner-occupied, single family residences." The mailer provided, in relevant part,

Lines [of credit] range from $15,000 to $300,000. Annual Percentage Rates (APRs) are variable and as of March 1, 2005, ranged from 5.65% to 16.9%. Your APR will be determined by the particu-

lar circumstances of your initial advance, property location and type, credit history, loan-to-value ratio and any rate reduction options that you select. APRs are subject to change and may not be available at commitment or closing. This account has a 20–year term. Customers are able to draw on their lines for the first 10 years of their account and minimum monthly payments are interest-only. During the second 10 years, customers repay their accounts by making amortizing payments of principal and interest. You cannot draw on the loan at this time.

APRs are calculated by adding a margin to the highest Prime Rate published in the "Money Rates" section of *The Wall Street Journal.* The maximum APR will be the lesser of 24% or 8% above your initial APR.

.... The minimum line amount is $15,000; the amount and terms of your line will be based on a review of the information you provide us. You and/or your co-borrower may not receive this line or the interest rates quoted if you do not currently meet the selection criteria used or our credit, equity and collateral requirements, or do not respond by the expiration date.

Plaintiffs claim that the solicitation to Putkowski was a "sales pitch" inviting him to apply for a loan, but assert that it was not a "firm offer of credit" because it did not provide the terms of a credit transaction. Specifically, plaintiffs contend that while the solicitation indicates that Irwin's interest rates have ranged from 5.56 per cent to 16.9 per cent, it does not state the precise rate of interest to be charged. Plaintiffs also assert that while the solicitation indicates a range of $15,000 to $300,000 for the amount of credit to be extended, it does not state the precise amount. Plaintiffs allege that the absence

of the amount of credit to be extended and the rate of interest to be charged prevent the solicitation from constituting a firm offer of credit.

Plaintiffs also claim that Irwin obtained a consumer report on Childress in August 2003, that Childress did not initiate any transactions related to that consumer report, that Childress did not authorize the consumer reporting agency from which Irwin obtained the report to supply the consumer report to Irwin, and that Irwin obtained the consumer report without Childress' consent or knowledge. Plaintiffs assert, on information and belief, that after Irwin obtained the consumer report on Childress, Irwin mailed Childress one of Irwin's standardized written solicitations, "either substantially in the form attached as Exhibit A or in another form used by Irwin which does not include the essential terms of a credit transaction."[2]

Plaintiffs claim that the solicitation sent to Childress was a "sales pitch" inviting Childress to apply for a loan, but assert that because the mailer failed to state the rate of interest to be charged or the amount of credit to be extended, the solicitation did not constitute a firm offer of credit.

Plaintiffs assert violations of two sections of the FCRA—15 U.S.C. § 1681b(c) and § 1681m(d). Plaintiffs raise these claims in their individual capacities and also as proposed representatives of a putative class of similarly situated individuals who allegedly received an offer of credit from Irwin.

Plaintiffs assert that Irwin violated § 1681b(c) by obtaining credit information without a "permissible purpose" ("the permissible purpose claim"). Plaintiffs seek a judicial declaration of the rights of the

parties regarding Irwin's obligation to make firm offers of credit to individuals whose consumer reports were obtained by Irwin in connection with credit transactions not initiated by those individuals, and a declaration as to whether such practice violates the FCRA, as well as an order enjoining Irwin from obtaining consumer reports on individuals in connection with credit transactions not initiated by those individuals, and then failing to make a firm offer of credit to such individuals.

Plaintiffs allege that Irwin violated § 1681m(d) by failing to include the disclosures mandated by that subsection ("the disclosure claim"), and that Irwin has engaged in a policy and practice of failing to make such disclosures. Plaintiffs seek a judicial declaration of the rights of the parties regarding Irwin's obligation to provide clear and conspicuous disclosures when making a written solicitation in connection with a credit transaction not initiated by the individual after obtaining a credit report on such individual, as well as an order enjoining Irwin from failing to provide such clear and conspicuous disclosures.

Irwin argues that the SAC should be dismissed under Rule 12(b)(6) for failure to state a claim as to both Putkowski and Childress, and because declaratory and injunctive relief is not available to private litigants under the FCRA. Irwin submits that all the claims should be dismissed without leave to amend.

## DISCUSSION

### A. Legal Standards

■ A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only where it ap-

---

**2.** The SAC describes the mailer attached as Exhibit A as "[a]n exemplar of one of Irwin's standardized written solicitations."

pears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir.1994). Review is limited to the contents of the complaint. *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir.1995). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996).

▮▮▮▮ Motions to dismiss for failure to state a claim are disfavored, *see Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997), and 12(b)(6) dismissals are proper only in "extraordinary" cases. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981). In dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995) (citations omitted).

### B.  Defendants' Motion

#### 1.  Permissible Purpose Claim

▮▮▮▮ Irwin argues that plaintiffs cannot state a claim for obtaining consumer information without a permissible purpose, because the Irwin mailers set forth a firm offer of credit, and it is permissible under the FCRA to obtain consumer information for the purpose of making a firm offer of credit. Because the SAC alleges that Childress received a mailer *either* substantially in the form attached as Exhibit A *or* in another form which they do not identify, the court finds that plaintiffs have not alleged that Childress received a specific mailer. Thus, it is not possible for the court to consider whether the mailer that Childress allegedly received made a firm offer of credit.

Irwin contends that the mailer Putkowski is alleged to have received sets forth a pre-approved offer for a secured home equity line of credit within the meaning of the FCRA. Irwin contends that the offer included the following terms: a) a line of credit in the minimum amount of $15,000, and up to $300,000; b) a 1% cash balance bonus on balance transfers; c) payment options including the option of choosing the interest-only payment or the full balance or anything in between, for the first ten years; c) the option to pay down the principal and re-use the credit line; d) no opening fees (no application fee, no processing fee, no appraisal fee, no points); e) the ability to obtain a loan for up to 100% of the value of the applicant's home, less the amount of any first mortgage; f) the option of obtaining a lower monthly payment or lower interest rate by choosing a line with points and/or opening fees; and g) variable interest rates, not to exceed the lesser of 24%, or 8% above the initial rate.

Irwin contends that the FCRA and relevant case law establish that a "firm offer of credit" may in fact be conditional in many respects, and that the offer need not contain the precise interest rate or the exact amount of credit that a borrower may later qualify for. Irwin asserts in addition that the legislative history of the FCRA affirms Congress' intent that an offer of credit may be conditional, and that the offeror may later withdraw the offer if the consumer does not meet the creditworthiness criteria.

Thus, Irwin asserts, the mailer at issue satisfies the requirements of the FCRA, because it states that the recipient was pre-approved for a home equity line of between $15,000 and $300,000, and it specifies all the material terms of the offer, including the term of the loan, the maxi-

mum interest rate, the applicable fees, the amortization and collateral requirements, the payment options, the insurance requirements, and the underwriting standards.

In opposition, plaintiffs argue that Irwin did not make a "firm offer of credit," and that the act of obtaining plaintiffs' consumer information was therefore not for any permissible purpose. Plaintiffs claim that the FCRA does not define the separate terms "offer" and "firm." Thus, plaintiffs argue, the court should look at the common and ordinary meaning of "offer" as reflected in the dictionary definitions and in the definition in the *Restatement of Contracts*—meaning generally, a manifestation of willingness to enter into a contract—and should look at the dictionary definition of "firm"—meaning "not subject to change, revision, or withdrawal."

Plaintiffs submit that a statement of material terms that includes a loan amount ranging from $15,000 to $300,000, and an interest rate ranging from 5.65% to 24%, is not sufficiently definite to constitute an offer because it is not enforceable. Plaintiffs claim that such a statement is nothing more than a sales pitch designed to persuade consumers to apply for a home equity line of credit.

Plaintiffs rely on *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir.2004), in which the Seventh Circuit considered whether a promotional flyer constituted a "firm offer of credit" under the FCRA. The promotional flyer stated that the recipient was pre-approved to participate in an exclusive offer, making her eligible to receive a Visa or MasterCard with limits up to $2000 and credit towards an auto loan in an amount up to $19,500. *Id.* at 722. The offer guaranteed a minimum of $300 in auto credit, stated that interest rates might vary from 2.9 to 24.9%, but contained no information on how interest would be compounded or terms of repayment. *Id.* at 723.

The Seventh Circuit stated that in considering whether an offer is a firm offer of credit under the FCRA a court "must consider the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question." *Id.* at 728. The court found that the relatively small amount of credit guaranteed in the defendants' offer, combined with the limitation that it must be used for a vehicle purchase, raised the question whether the offer had "value" to the consumer. *Id.* The court further noted that the absence of material terms from the offer, such as the precise interest-rate, the method of compounding interest, and the repayment period, rendered it impossible for a court to determine from the pleadings whether the offer had value. *Id.* The court concluded that the flyer did not extend a firm offer of credit, noting that "[t]he statutory scheme of the FCRA makes clear that a 'firm offer' must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy." *Id.* at 727.

Plaintiffs in the present case argue that the interest rate is a missing material term, as it ranges from 5.65% to 24%, is "subject to change," and "may not be available," and assert that the mailer therefore did not constitute a firm offer of credit. Plaintiffs also contend that the offered amount of the loan—$15,000 to $300,000—ranges too widely to constitute an offer, much less a "firm offer" under the FCRA.

The court finds that the mailer sets forth a "firm offer of credit," as defined in the FCRA. While it is technically true that the FCRA does not define the separate terms "offer" and "firm," it does define "firm offer of credit." *See* 15 U.S.C. § 1681b(a). In addition, the 1997 amendments to the FCRA provide that a firm offer of credit may be conditioned on one or more of the following:

(1) The consumer being determined, based on information in the consumer's application for the credit or insurance, to meet specific criteria bearing on credit worthiness or insurability, as applicable, that are established -

(A) before selection of the consumer for the offer; and

(B) for the purpose of determining whether to extend credit or insurance pursuant to the offer.

(2) Verification

(A) that the consumer continues to meet the specific criteria used to select the consumer for the offer, by using information in a consumer report on the consumer, information in the consumer's application for the credit or insurance, or other information bearing on the credit worthiness or insurability of the consumer; or

(B) of the information in the consumer's application for the credit or insurance, to determine that the consumer meets the specific criteria bearing on credit worthiness or insurability.

(3) The consumer furnishing any collateral that is a requirement for the extension of the credit or insurance that was -

(A) established before selection of the consumer for the offer of credit or insurance; and

(B) disclosed to the consumer in the offer of credit or insurance.

15 U.S.C. § 1681a(*l*).

The text of the FCRA does not support plaintiffs' suggestion that a firm offer of credit cannot contain a range of credit or interest rates, or that it must be of sufficient "value" when judged by a later arbi-

ter, as suggested by the Seventh Circuit in *Cole.* There is also nothing in the FCRA that would prohibit a potential lender from indicating that a responding recipient may later obtain more favorable terms than the minimum terms presented in the mailer. Here, the Irwin mailer offered a minimum 20–year, $15,000 line of credit, with a maximum interest rate of 24%. The fact that the mailer also suggested that a recipient might later receive a more favorable offer of credit does not violate the FCRA.

2. Disclosure Claim

▮ Irwin argues that the disclosure claim should be dismissed because the mailer clearly set forth the required disclosures, and because the FCRA does not provide a private right of action for claims under § 1681m for failure to provide the mandated disclosures.

First, Irwin contends that the terms of the offer and the information required by § 1681m(d) were clearly and conspicuously disclosed. Plaintiffs maintain, however, that the required disclosures do not appear in the letter Putkowski received [3] but rather appear on the back of the brochure, buried in half-tone fine print. They claim that while the letter includes the notation, "See our enclosed brochure," the disclosures in the brochure are in barely readable print, not in a different or larger typeface.

In its second argument, Irwin asserts that the disclosure claims (second, fourth, and sixth causes of action) are barred as a matter of law, because there is no private right of action for violation of the § 1681m(d) disclosure requirements. The FCRA imposes civil liability on any person who wilfully or negligently fails to comply with the requirements of the FCRA. 15

---

**3.** Plaintiffs apparently do not know which mailer Childress received, if any. *See* SAC ¶ 56.

U.S.C. §§ 1681n, 1681o. In 2003, Congress enacted the Fair and Accurate Transactions Act ("FACTA"), Pub.L. No. 108–159, 117 Stat.1952 (2003), which amended the FCRA to eliminate private rights of action for violations of § 1681m(d). As amended by FACTA, § 1681m now provides that "[s]ections 1681n and 1681o of this title shall not apply to any failure by any person to comply with this section," and that "[t]his section shall be enforced exclusively under section 1681s by the Federal agencies and officials identified in this section." 15 U.S.C. § 1681m(h)(8).

In opposition, plaintiffs acknowledge that a number of district courts have recently held that private individuals can no longer pursue claims for violation of § 1681m(d). Nevertheless, plaintiffs argue that the court should look beyond the express language of the statute because in plaintiffs' view the statutory language is ambiguous, and because a literal interpretation would thwart the purpose of the overall statutory scheme or lead to an absurd result.[4] Specifically, plaintiffs claim that the statement in § 1681m(h)(8) that "[s]ections 1681n and 1681o of this title shall not apply to any failure by any person to comply with this *section*" is ambiguous because it is not clear whether "section" refers to all of § 1681m or just to § 1681m(h).[5]

In reply, Irwin disputes the assertion that "section" doesn't really mean "sec-

tion," pointing to a recent decision from the Northern District of California, *White v. E–Loan, Inc.*, 409 F.Supp.2d 1183 (N.D.Cal.2006), which analyzes this very issue. In that case, the district court noted that Congress follows a convention (based on the House Legislative Counsel's Manual on Drafting Style and Senate Office of Legislative Counsel's Legislative Drafting Manual) when it uses organizational terms in statutes, breaking down "section" into subparts as follows: "subsections," "paragraphs," "subparagraphs," and "clauses." *Id.* at 1185 (citing *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004)).

Irwin also disputes plaintiffs' assertion that a finding that § 1681m provides no private right of action would leave consumers who do not receive sufficient disclosures without any recourse, noting that § 1681m(h)(8) expressly provides that violations of § 1681m may be enforced by the FTC, by Federal banking agencies, and by the National Credit Union Administration.

As to Putkowski, the motion to dismiss the claims of failure to make clear and conspicuous disclosures (the second, fourth, and sixth causes of action) is GRANTED. While § 1681n and § 1681o of the FCRA generally establish a private right of action for certain violations of the FCRA, § 1681m(h)(8) (added by FACTA) now expressly provides that there is no

---

**4.** Plaintiffs also argue that the FACTA amendments, which became effective December 4, 2003, should not be applied retroactively. However, the court need not address this argument, as the SAC alleges that Irwin did not obtain the consumer report on Putkowski until May 2005, and his claim therefore did not accrue until after the effective date of FACTA.

**5.** Plaintiffs submit that "[t]he placement of the term 'section' in a paragraph of a subsec-

tion gives rise to more than one possible meaning." In support, they quote Reed Dickerson, *The Fundamentals of Legal Drafting*, at 84 (2d ed.1986), for the proposition that " 'a satisfactorily arranged legal instrument is an ordered set of ordered sets in which there are subsets to the order *n* and in which each subset expresses a principle less significant than that expressed by its parent set or subset.' "

private right of action for violations of § 1681m.

It is clear from the text of the FCRA that "section" has a particular meaning within the hierarchy of "section," "subsection," "paragraph," "subparagraph," and "clause." The "section" is designated by the number in the main heading, which follows the " § " sign. The subsections are designated by lower-case letters. The paragraphs are designated by arabic numerals. The subparagraphs are designated by capital letters. The clauses are designated by lower-case roman numerals. The court sees no need to contribute further to the already extensive exegesis of § 1681m(h)(8). *See, e.g., Phillips v. New Century Financial Corp.*, 2006 WL 517653 at *2–4 (C.D.Cal., March 1, 2006); *White*, 409 F.Supp.2d at 1184–87; *Stavroff v. Gurley Leep Dodge, Inc.*, 413 F.Supp.2d 962, 963–67 (N.D.Ind.2006); *Murray v. Cross Country Bank*, 399 F.Supp.2d 843, 844 (N.D.Ill.2005); *Murray v. Household Bank*, 386 F.Supp.2d 993, 997–99 (N.D.Ill. 2005); *Hernandez v. Citifinancial Servs., Inc.*, 2005 WL 3430858 at *2–6 (N.D.Ill., Dec.9, 2005).

### 3. Claims as to Childress

Irwin argues that the claims as to Childress should be dismissed for two reasons—they are time-barred, and they fail to state a claim. An action to enforce liability under the FCRA must be brought within the earlier of (a) two years after the date of discovery by the plaintiff of the violation that provides the basis for such liability, or (b) five years after the date on which the violation that is the basis for such liability occurs. 15 U.S.C. § 1681p. In the SAC, plaintiffs allege that Irwin obtained a consumer report on Childress

in August of 2003, more than two years prior to the date that Childress was joined as a plaintiff.[6] Irwin contends that as Childress has not alleged facts showing that she discovered that Irwin had obtained her consumer information fewer than two years before she was joined in the action, her claims must be dismissed as untimely.

In opposition, plaintiffs argue Irwin accessed Childress' information without her knowledge sometime in August 2003, and the mailed solicitation came at some point thereafter. They assert that the filing of a complaint containing class action allegations tolls the statute of limitations with respect to all purported class members. Since the proposed class action complaint was filed by Putkowski in August 2005, plaintiffs assert that the statute of limitations for purported class members' claims was tolled beginning August 2005.

In reply, Irwin argues that the filing of Putkowski's complaint in August 2005 cannot save Childress' disclosure claim where Putkowski himself had none. Irwin asserts that when Putkowski filed suit on August 12, 2005, he had no right to assert a private cause of action for an alleged FACTA disclosure violation because that right was negated by the FACTA amendments. Thus, Irwin contends, the filing of the original complaint did not toll the limitations period for Childress, because at the time of filing, Putkowski was an inadequate class representative.

Irwin argues further that even if one assumes for the sake of argument that the filing of the original complaint by Putkowski tolled the statute of limitations for other putative class members who received

---

**6.** Putkowski was the sole named plaintiff in the original complaint, which was filed on August 12, 2005, and amended on October 4, 2005. The parties then stipulated to the filing of a second amended complaint, and the order permitting the filing of the SAC was issued on December 9, 2005. Plaintiffs filed the SAC on December 23, 2005.

the same mailer in the two years prior to suit, Childress still has no valid claim because she did not allege that she received the mailer that is attached to the SAC—or any other mailer—after August 12, 2003, and because her efforts to assert disclosure claims on behalf of a class are barred by the FACTA amendments.

Irwin also argues that the allegations regarding Childress are too vague to state a claim. The SAC alleges that Childress received a mailer from Irwin, at some unspecified time—a mailer that was either "substantially similar" in form to one of the mailers attached to the SAC or was in "some other form." The SAC therefore says nothing specific about the disclosures made in the mailer sent to Childress or why those disclosures are not sufficient under the FCRA. Irwin contends that because plaintiffs are unable to state any facts regarding the alleged solicitation, the claims as to Childress are too vague and conclusory to state a claim under the FCRA.

In opposition, plaintiffs argue that they have alleged facts sufficient to put Irwin on notice of the claims asserted. They contend that it is undisputed that Irwin accessed Childress' consumer information without her knowledge and consent, and that Irwin must therefore have an enumerated permissible *purpose under* § 1681b. They assert that *either* Irwin did not send a solicitation to Childress, and thus had no permissible purpose, *or* Irwin sent a solicitation to Childress in the same or similar form as the mailer sent to Putkowski, which did not contain a firm offer of credit, *or* Irwin sent a solicitation to Childress in the same or similar form as the mailer sent to Putkowski, which contained a firm offer of credit but did not contain adequate disclosures.[7]

In reply, Irwin asserts that Childress fails to allege facts which, if true, support a cognizable claim for relief under the FCRA. Irwin claims that because Childress cannot allege what mailer she received or when she received it, she cannot simultaneously allege that Irwin did not send her a "firm offer of credit" or failed to make "clear and conspicuous" disclosures. Irwin notes that Childress claims that her credit file was accessed in 2003, and then speculates that Irwin sent her a mailer similar to the one that Putkowski allegedly received some two years later— in 2005—or possibly sent her a mailer similar to another copy of a "standardized" Irwin mailer attached to the SAC. Irwin contends that the court cannot properly infer any facts to support the claims made by Childress by reading the mailer that Putkowski allegedly received, because Childress has simply guessed that Irwin sent her a mailer that "may have" indicated a range of interest rates and "may have" included substantial ranges of credit to be extended. Irwin argues that Childress cannot state a claim for relief by simply guessing.

The court finds that the motion must be GRANTED, because plaintiffs cannot say what mailer Childress received (and there is therefore no way to determine whether she did or did not receive a firm offer of credit), and because the disclosure claim is time-barred. At the time Putkowski filed suit, he was barred from bringing the § 1681m(d) claim because FACTA had eliminated the private right of action for such suits. Thus, he cannot be an adequate class representative as to the § 1681m(d) claim, and the claim must be dismissed. *See Lierboe v. State Farm*

---

7. A fourth possibility, not mentioned by plaintiffs, is that Irwin sent Childress some other type of mailer, with a different (unspecified) offer of credit and different (unspecified) disclosures.

**1064**

*Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir.2003).

■ It is generally true that the filing of a class action tolls the running of the statute for all members of the class who seek to intervene as plaintiffs in a continuing action, even where the court has found the action inappropriate for class action status. *See Catholic Soc. Serv., Inc. v. I.N.S.*, 232 F.3d 1139, 1146–47 (9th Cir. 2000). However, at the time that plaintiffs joined Childress to the present suit, there was no viable claim under § 1681m(d). Thus, there was nothing to toll.

## CONCLUSION

In accordance with the foregoing, the court GRANTS the motion to dismiss. The dismissal is WITH PREJUDICE. Plaintiffs cannot state a claim as to Childress, because they cannot say what mailer she received, and because her disclosure claim is time-barred. Putkowski's claim under § 1681b fails because the mailer he received did extend a firm offer of credit, and his claim under § 1681m fails because there is no private right of action under that section. Because the SAC must be dismissed, the court does not address the argument with regard to declaratory and injunctive relief.

**IT IS SO ORDERED.**