**In Re: OCEAN BANK.**

**No. 06 C 3515.**

United States District Court, N.D. Illinois.

March 16, 2007.

David T. Butsch, Clayton, MO, James X. Bormes, Law Office of James X. Bormes, Chicago, IL, James J. Simeri, Joe D. Jacobson, Green Jacobson & Butsch, P.C., Clayton, MO, David S. Markun, Markun Zusman & Compton LLP, Pacific Palisades, CA, Edwards S. Zusman, Kevin K. Eng, Markum Zusman & Compton LLP, San Francisco, CA, Richard Andre Lilly, Robert K. O'Reilly, Ademi & O'Reilly LLP, Cudahy, WI, for Plaintiffs.

Ann E. Kim, Michael K. Sullivan, Blank Rome LLP, Philadelphia, PA, David J. Hanus, Hinshaw & Culbertson, Milwaukee, WI, David M. Schultz, Hinshaw & Culbertson, Ilan J. Chorowsky, Chorowsky Law Offices, Julie Ann Garvey, Seidler & McErlean, Chicago, IL, J. Scott Schnurer, John D. Blythin, Ademi & O'Reilly LLP, Cudahy, WI, Kevin K. Eng, Markum Zusman & Compton LLP, San Francisco, CA, Matthew Thomas Oliverio, Stephen J. MacGillivray, Raymond Matthew Ripple, Edwards Angell Palmer & Dodge LLP, Stephen M. Prignano, Edwards & Angell, LLP, Providence, RI, Noah Shube, Friedman & Shube, New York City, Paul M. Honigberg, Blank Rome LLP, Washington, DC, Christopher M. Lefebvre, Pawtucket, RI, for Defendants.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Jeremy Patrick Monteiro, Edelman, Combs, Latturner & Goodwin, LLC, William M. McErlean, Brett Hunter Pyrdek, Cathleen M. Combs, Barnes & Thornburg LLP, Chicago, IL, for Ocean Financial Corp. Prescreening Litigation.

## STATEMENT

ST. EVE, District Judge.

Before the Court is Plaintiff Johnny Tremble's Amended Motion to Strike Defendant's Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(2) and to Bar Testimony of Barry Connelly and Adele Pool. For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Johnny Tremble has filed suit against Ocean Bank Financial Corporation ("Ocean Bank"), alleging that Ocean Bank accessed a consumer report on Plaintiff without his consent or for any lawful reason in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (R. 1–1, No. 05 CV 2624, Compl.) Plaintiff Tremble's Complaint was initially filed in this Court on May 2, 2005. Subsequently, it was consolidated with several other cases for pre-trial proceedings following the decision of the Judicial Panel on Multidistrict Litigation to transfer MDL 1778, *In re Ocean Financial Corp. Prescreening Litigation,* to this Court.[1]

The parties' dispute focuses largely on Plaintiff Tremble's allegation that a mailer he received from Ocean Bank offering a home equity loan does not qualify as a "firm offer of credit" within the meaning of the FCRA, because it (1) is "vague and totally lacking in terms," and "has no value beyond a solicitation for loan business, the sending of which is not a permissible purpose for accessing a consumer report"; and (2) lacks certain disclosures that the FCRA requires senders to make in a "clear and conspicuous" manner. (*Id.* ¶ 27.) The parties also dispute whether Ocean Bank "willfully" violated the FCRA as required for civil liability pursuant to 15 U.S.C. § 1681n.

On April 7, 2006, Plaintiff filed his initial Motion to Strike Defendant's Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(2) and to Bar Testimony of [Defendants' proposed experts] Barry Connelly and Adele M. Pool. (R. 79–1, No. 05 CV 2624.) On June 14, 2006, the Court denied the Motion without prejudice to refile the Motion after Plaintiff deposed Defendant's proposed experts. (R. 93–1, No.

05 CV 2624, Minute Order dated June 14, 2006.) On November 17, 2006, after Plaintiff took the depositions of Mr. Connelly and Ms. Pool, Plaintiff filed the amended motion currently before the Court.

## LEGAL STANDARD

■ **Ocean Bank challenges the disclosures of the proposed experts under** *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Federal Rule of Evidence 702. Under Rule 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of opinion or otherwise," given that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The trial court must perform a gatekeeping function to determine whether expert scientific evidence is admissible under Rule 702. *Daubert,* 509 U.S. at 592–95, 113 S.Ct. 2786; *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The purpose of the court's gatekeeping function is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho,* 526 U.S. at 152, 119 S.Ct. 1167. "In analyzing the reliability of proposed expert testimony, the role of the court is to determine whether the expert is qualified in the rele-

---

1. Unless otherwise indicated, all references to the Record are to the Record in the consolidated case, 06 CV 3515, rather than to the

Record in Mr. Tremble's initial pre-consolidation matter, 05 CV 2624.

vant field and to examine the methodology the expert has used in reaching his conclusions." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir.2000).

■■■ Expert testimony as to legal conclusions that will determine the outcome of a case is inadmissible. *Good Shepherd Manor Found. v. City of Momence*, 323 F.3d 557, 564 (7th Cir.2003). In other words, experts "cannot testify about legal issues on which the judge will instruct the jury." *United States v. Sinclair*, 74 F.3d 753, 757 n. 1 (7th Cir.1996). As a result, courts will not admit testimony on purely legal matters and comprised solely of legal conclusions. *Good Shepherd*, 323 F.3d at 564. The meaning of the law "is not a question of fact, to be resolved by the jury after a battle of experts," but is instead "a question of law, to be resolved by the court." *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994). While "legal" testimony is permissible in some circumstances—such as when a witness is called to testify on the probable meaning of an ambiguous contractual term, rather than on the law that governs the case—only experts with the proper legal background (in the above example, a lawyer with experience regarding the type of contractual provisions at issue) may offer such testimony *See Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 365–66 (7th Cir.1990).

Furthermore, the Seventh Circuit teaches that courts should not consider testimony on the intended meaning of statutory language unless it is true legislative history—"a contemporaneous record that helps a court reconstruct the meaning of our always-ambiguous language." *Covalt v. Carey Canada Inc.*, 860 F.2d 1434, 1438 (7th Cir.1988). "By definition, words written after [Congress'] vote and the President's signature were uninfluential in the process leading to the vote," and because "[s]ubsequent writings may be nothing but

wishful thinking," they are generally "of no account." *Id.* "Legislative history generated in the course of litigation has even less utility, for it may be designed to mislead, to put an advocate's slant on things." *Id.* at 1438–39.

## ANALYSIS

### I. Timing of Plaintiff's Motion

Ocean Bank advances two arguments attacking the Court's ability to address the merits of Plaintiff's motion. First, Ocean Bank argues that the Court already decided the merits of the motion in its June 14, 2006, ruling, and that as a result, the Court should deny the motion outright as a deficient motion for reconsideration. (R. 66–1, Am. Mem. in Opp. to Mot. to Strike and Bar at 2–3.) Ocean Bank's argument is unavailing. The Court has not yet ruled on the merits of Plaintiff's motion, as the June 14 ruling merely denied the motion without prejudice pending the depositions of Mr. Connelly and Ms. Pool.

■■ Second, Ocean Bank claims that Plaintiff's motion is premature because it seeks evidentiary rulings that the Court should more appropriately address at trial. (*Id.* at 3–4.) This argument also fails. The Court may properly consider the admissibility of expert testimony prior to trial as part of the "screening" or "gatekeeping" role assigned to it by the Supreme Court. *See Daubert*, 509 U.S. at 592, 596–97, 113 S.Ct. 2786. Ocean Bank has not cited any authority indicating that a Court must wait until trial to decide whether to admit expert testimony. Further, the information needed to make the decision is before the Court following completion of the expert depositions. Ocean Bank also argues that the Court should not decide the motion at this stage because a ruling would preclude the district courts to which the Court will remand the consolidated

matters for trial from making individual determinations on admissibility of the expert testimony. Because MDL litigation is designed to streamline complex litigation by, in part, having one court rule on issues that would otherwise come before multiple courts, this argument favors a decision at this stage.

## II. Expert Principles and Methodology

While most of Plaintiff's arguments relate to his view that Ocean Bank's experts improperly plan to testify on legal matters, Plaintiff also argues that the expert disclosures rely on insufficient methodology or principles, rendering them inadmissible under *Daubert*. (R. 49–1, Am. Mem. in Supp. of Mot. to Strike or Bar at 12–15) Plaintiff's "principles and methodology" argument fails.

 Plaintiff correctly notes that *Daubert* calls on courts to scrutinize the methodology underlying an expert opinion, as "the focus ... must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786. His view of the factors that a Court may consider in analyzing principles and methodology, however, is overly restrictive. *Daubert* lists a number of relevant considerations—including testing, peer review, error rates, and acceptability in the relevant scientific community, *id.* at 593–94, 113 S.Ct. 2786—but the Supreme Court has clearly stated that "the test of reliability is flexible, and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho*, 526 U.S. at 141, 119 S.Ct. 1167 (internal quotation omitted). "Rather the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142, 119 S.Ct. 1167 (emphasis in original). Opinions based on relevant experience may be sufficiently reliable to justify admissibility. As Judge Posner has stated, "[a]nyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir.2000). While Plaintiff criticizes Mr. Connelly's disclosures for "us[ing] no scientific principles nor any validations to test any of his conclusions" (R. 49–1, Am. Mem. in Supp. of Mot. to Strike and Bar at 12), "[t]he principle of *Daubert* is merely that if an expert witness is to offer an opinion based on science, it must be real science, not junk science." *Tuf Racing*, 223 F.3d at 591. As a result, the Court will not strike the entirety of the disclosures on the basis that they rely on inadequate principles or methodology. To the extent that the experts' opinions are sufficiently based on the experts' expertise in their respective fields and are otherwise admissible, they may stand.

## III. Legal Conclusions

The Seventh Circuit precedent outlined above clearly indicates that expert testimony on both legal conclusions and on the meaning of the statutory provisions (or "legislative history") is improper. The Court strikes such opinions from the disclosures and bars testimony on them at trial.

### A. Barry Connelly Disclosure

Mr. Connelly's Disclosure consists of three Sections: (1) "Ocean Bank's Pre-screened Offer is a Firm Offer of Credit"; (2) "The Disclosures in Ocean Bank's Pre-screened Offer Were Clear and Conspicuous"; and (3) "Ocean Bank's Conduct Was Not Willful." The Court will consider each Section in turn.

#### 1. Firm Offer of Credit

One of the central issues in this case is whether the mailer Plaintiff received from

Ocean Bank constitutes a "firm offer of credit" under the FCRA, thus legitimizing Ocean Bank's examination of Plaintiff's consumer report. In the Seventh Circuit's recent opinion in *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 726–728 (7th Cir.2004), the court helped further explain the meaning of "firm offer of credit," which the FCRA defines as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(1). The statute further provides that offerors may condition their offer based on three specific requirements: (1) "the creditor may apply additional pre-selected criteria bearing on the consumer's creditworthiness," (2) "the firm offer may be conditioned on verification that the consumer continues to meet the specific criteria used to select the consumer for the offer;" and (3) "the offer may be conditioned on the consumer's furnishing any collateral that was both established before the selection of the consumer for the offer and disclosed to the consumer in the offer." *Cole*, 389 F.3d at 726 (citing 15 U.S.C. § 1681a(1), internal quotations omitted).

Confronted with a situation in which the credit offered to a plaintiff was insignificant enough to raise questions about whether the offer was a sham used to access the plaintiff's credit report for purposes not related to the offer, the Seventh Circuit looked to the purpose of the FCRA and Congressional intent to elaborate on the meaning of "firm offer of credit" under the FCRA. *See Cole*, 389 F.3d at 726–27. The Court concluded that "[t]o determine whether the offer of credit comports with the statutory definition, a court must con-

sider the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question." *Id.* at 727–28 (emphasis in original). If this examination of the "entire context" reveals "that the 'offer' was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit." *Id.* at 728. The *Cole* court then named a number of specific offer terms—including but not limited to "the rate of interest charged, the method of computing interest, and the length of the repayment period"—that are relevant to the inquiry into whether the terms are "so onerous as to deprive the offer of any appreciable value." *Id.* The court ultimately concluded that the district court below erred in dismissing the plaintiff's complaint because the complaint stated facts that would allow the plaintiff to "establish that the [offer] had no real value." *Id.* The Seventh Circuit has since indicated that the rule of *Cole* applies in the home equity lending context as well as to the automotive credit involved in *Cole*. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 955–56 (7th Cir.2006).

■■■ The "firm offer" Section of Mr. Connelly's disclosure begins with a paragraph that outlines Plaintiff's legal claims and concludes, based on his "years of [prescreening-related] experience" that "Ocean Bank complied with the letter and spirit of the law because the prescreened offer at issue in this case is a firm offer of credit." (R. 49–2, Connelly Discl. at 4.) This is a bare legal conclusion regarding the FCRA's key "firm offer of credit" term that lacks factual support and will not assist the jury. Although Mr. Connelly probably intended this paragraph as a summary of the content to follow, the legal conclusion is not supported anywhere in Mr. Connelly's disclosure, and as a result, the Court strikes Section I, Paragraph 1.[2]

2. As mentioned above, Mr. Connelly's Disclo- sure contained three subject headings, but it

■ Section I, Paragraph 2 of Mr. Connelly's disclosure provides general information on prescreening, based on Mr. Connelly's extensive experience in the credit reporting industry, which could assist the jury in understanding the issues in the case. As a result, this portion of Mr. Connelly's disclosure will stand.

■ The following portion of Mr. Connelly's disclosure is a lengthy recitation of his view on prior legal provisions related to prescreening, how the current prescreening provisions of the FCRA developed, and how Congress passed certain provisions of the FCRA as a practical matter, including how supporters of the legislation garnered the credit reporting industry's support. This information is either irrelevant to the current law that will govern this case, or is improper legislative history testimony under *Covalt*. As a result, the Court strikes Paragraphs 3–9 of Section I.

■ The paragraphs that follow are to some extent more of the same, but they move even further beyond the bounds of proper expert testimony when Mr. Connelly purports to explain the goals of the 1996 amendments to the FCRA and the meaning of the statute generally. As discussed above, experts may not instruct the jury on the meaning of the law, as Mr. Connelly purports to do when he, for example, states that certain FCRA amendments successfully "preserve[d] [the right of financial institutions] to protect their financial interests against fraud and against the ravages of a recently deteriorated consumer credit history" (R. 49–2, Connelly Discl. at 7–8), or when he purports to explain the

significance of the concept of "consent" within the FCRA statutory scheme. (*Id.* at 9.) Surprisingly, Mr. Connelly even goes so far as to directly confront the "provision of value" holding of *Cole*, arguing that "Congress purposely accepted the 'firm offer' standard established by the FTC in it's [sic] 1990 Commentary and made the firm offer subject to a number of qualifications, not one of them speaking to the 'value' of the offer or the credit specifics of the offer," and that "no where [sic] can you find Congress trying to dictate the kind of credit offered or trying to establish a minimum 'value' of the credit offered." (*Id.* at 8–9.) Mr. Connelly proceeds to explain the policy rationale for his position, pointing to the differences between credit card debt and home equity loans (*id.* at 9–10), and explaining that for those who truly understand the Congressional purposes underlying the FCRA "it is easy to see" why Congress "required no specific 'value' to the offer." (*Id.* at 9.) Unfortunately for Ocean Bank, regardless of the merit of Mr. Connelly's views, this Court is bound by Seventh Circuit precedent, and not by the legal opinions of a non-lawyer retained expert witness. The remainder of Section I of the disclosure is infected by this improper testimony, and as a result, the rest of the Section—Paragraphs 10–14—is stricken from the report. At the end of the day, only Paragraph 2 of Section 1 remains.

### 2. Clear and Conspicuous Disclosures

■ The Court also strikes the entirety of Mr. Connelly's single-paragraph opin-

---

did not include paragraph numbers or other subdivisions. In referring to various portions of the disclosure, the Court will describe each of the three subject headings discussed above as "Sections," and will then refer to the paragraphs within each Section as if they were numbered sequentially within each Section. The paragraph identified in the text as "Sec-

tion 1, Paragraph 1" is thus the paragraph that begins with the line, "Plaintiff makes the claim that the prescreened offer of credit made by Ocean Bank ...." "Section II, Paragraph 1" begins, "Plaintiff also claims that Ocean Bank did not meet the standard for making ...."

ion on whether the mailer made certain disclosures required by the FCRA in a "clear and conspicuous" manner. Mr. Connelly again offers his view of the legislative history and proper interpretation of the FCRA in opining that "Ocean Bank's disclosure statement meets the Congressional expectation of clear and conspicuous," that "[i]f Congress had wanted the notice to appear on the front of any solicitation, Congress could easily had [sic] said so," and that Congress struck "a balance . . . calling for clear and conspicuous notice . . . not a specific type face or location." (*Id.* at 10.) This is precisely the type of *ex post* legislative history opinion forbidden by the Seventh Circuit in *Covalt.* Further, despite the lack of any credential or experience that would qualify him to say so, Mr. Connelly argues that "[c]learly any person like the plaintiff, who is capable of debating the legitimacy of a firm offer, is capable of finding the notice which is the only information appearing on the reverse of the letter and in type similar to that used in the offer." (*Id.*) Mr. Connelly is not qualified to offer this opinion, which amounts to a cross between expert psychological opinion and legal argument. The Court strikes Section II of Mr. Connelly's opinion.

### 3. Willful Conduct

The "willfulness" portion of Mr. Connelly's opinion is in part the same type of impermissible legal testimony described above, but it also provides some information based on Mr. Connelly's experience that could assist the jury. The first portion of the Section begins, "[f]irst, we repeat as above that for a prescreen product, no consent or permission of the consumer is required or implied." (*Id.* at 11.) It is unclear who Mr. Connelly refers to here as "we," but Ocean Bank has not established that he is qualified to offer testimony on the meaning of the law. As a result, the Court strikes the first three sentences of Section III, Paragraph 1 from the report.

The remainder of Paragraph 1 is also improper. The conclusion of this portion of Mr. Connelly's disclosure states that "[o]ne only has to look at the Ocean Bank solicitation sent to the Plaintiff and know how the bank handles such marketing internally to know that there cannot be a willful violation." (*Id.* at 11.) Regardless of the truth of this statement, intent is an issue for the jury, and Mr. Connelly's conclusion adds nothing that would assist the jury in performing their duties.

In Paragraph 2 of Section III, Mr. Connelly again argues for his interpretation of the law, and specifically, for his view that courts should treat home equity offers and other credit offers differently. This is a legal matter for determination by the court, and as a result, the Court strikes the first three sentences of Section III, Paragraph 2.

The remainder of Section III contains a small amount of proper expert testimony in which Mr. Connelly provides information, based on his experience, regarding the nature of the Ocean Bank offer. This information could help the jury understand whether the Ocean Bank offer constituted a "firm offer of credit." This portion of the opinion is also peppered with improper legal testimony, however, and as a result, the Court strikes the last sentence of Paragraph 2 ("[v]arious elements of the loan or credit card . . . were not required by Congress to establish a firm offer"), the first two sentences of Paragraph 3 (explicit references to the *Cole* case), the fourth sentence of Paragraph 3 (concluding that unlike the offer in the *Cole* case, Ocean Bank's offer was a "firm offer of credit"), and all but the first two sentences of Paragraph 4 (drawing

legal conclusions from facts that will be available to the jury). (*Id.* at 12)

The Court also strikes the "Conclusion" section, because like most of Mr. Connelly's report, it improperly testifies to the meaning of the law.

## B. Adele Pool Disclosure

Ms. Pool's disclosure is also divided into several Sections, entitled, "FCRA," "Prescreening," "FCRA Compliance," "Ocean Bank Did Not Willfully Violate the FCRA and There Was No Violation of the FCRA Because There was a Firm Offer of Credit," "Consumer Financial Services is a Publication that is Oriented to the Legal Profession," and "Ocean Bank's Firm Offers of Credit: Ocean Bank's Prescreened Offers were Firm Offers of Credit Under the FCRA." [3] The Court will consider each of these Sections in turn.

### 1. FCRA

■ This section consists merely of a two-sentence statement of Ms. Pool's view of the "initial purpose" of the FCRA, together with her opinion that "the FCRA has an interesting history." (R. 49–2, Adele M. Pool Expert Report at 9.) As discussed above, expert testimony on the history or purpose of the law is impermissible. The Court strikes this Section of the disclosure.

### 2. Prescreening

■ Much of this section contains background information on prescreening practices derived from Ms. Pool's experience in the banking industry that could help the jury understand the issues in the case. Of the first five Paragraphs of this Section, the Court strikes only the final sentence of the second Paragraph, which

contains a legal opinion of the National Consumer Law Center.

The remaining paragraphs of this Section are problematic, however, and are stricken from the disclosure. Much like large portions of Mr. Connelly's report, these paragraphs contain legal conclusions on the meaning of the "firm offer of credit" provision of the FCRA that are impermissible expert testimony, particularly from a witness with no legal background. Again, the Court, and not Ocean Bank's expert witnesses, will instruct the jury on the law.

### 3. FCRA Compliance

■ This portion of the disclosure reads like a legal brief, first stating the law, then stating the facts as she sees them, and finally drawing the critical conclusions under *Cole* that "Ocean Bank's prescreened offers were clearly of value to the consumers," and that "Ocean Bank's offer was not a sham or marketing solicitation." (*Id.* at 11.) In so doing, Ms. Pool fails to provide testimony based on her expertise that will assist the jury, and instead usurps the role of judge and jury by providing her "answer" to one of the ultimate issues in the case. As a result, the Court strikes this entire Section of Ms. Pool's opinion.

### 4. Ocean Bank Did Not Willfully Violate the FCRA

■ The first two paragraphs of this Section are very similar to the preceding Section of Ms. Pool's report in that they simply lay out Ms. Pool's characterization of the facts in the case and then repeatedly draw the conclusion that Ocean Bank did not violate the FCRA. This is improper, and the Court strikes these paragraphs from Ms. Pool's report.

---

**3.** The Court will use the same Section/Paragraph method of referring to various portions of the report used for the Connelly disclosure.

Paragraph 3 of this Section is short, but it provides testimony that could help the jury decide the "firm offer of credit" issue in this case, using Ms. Pool's industry expertise to describe the nature of the terms of Ocean Bank's offer.

Paragraph 4, however, returns to the pattern of presenting facts and drawing legal conclusions. After quoting the language from Ocean Bank's offer, Ms. Pool concludes that the disclosures contained in the offer are "consistent with regulatory creditworthiness practices." (*Id.* at 12.) The Court strikes Paragraph 4 from the disclosure.[4]

Paragraphs 5 and 6 repeat the pattern yet again. Paragraph 5 is simply a series of bulletpoints containing Ocean Bank's recitation of some of the facts of the case. Paragraph 6 then draws legal conclusions such as "[Ocean Bank's letter] complied with FCRA standards and practices," "[Ocean Bank] was FCRA compliant," "[Ocean Bank] issued prescreened offers that were firm offers of credit," and "[Ocean Bank] sent out a mailer that was a firm offer." (*Id.* at 13.) The Court strikes Paragraphs 5 and 6 from the disclosure.

The remainder of this Section consists of permissible expert testimony. While most of the material merely rehashes facts that Ms. Pool received from Ocean Bank, she uses her experience in the banking industry to conclude that assuming the facts are true, Ocean Bank's compliance program and subscription to certain business and legal publications is "consistent with banking industry standards." (*Id.* at 13.) Plaintiff argues that Ocean Bank's experts may not testify on willfulness because it amounts to testimony on Ocean Bank's "state of mind," but Ms. Pool does not opine directly on intent here. Instead, she provides information on the quality of Ocean Bank's compliance program, which may help the jury make their willfulness determination.

### 5. Consumer Financial Services

In this portion of her report, Ms. Pool opines that Ocean Bank's lack of awareness of an article on the *Cole* case in a publication called *Consumer Financial Services* was not a violation of banking industry standards because the publication is not targeted at bankers. Plaintiff does not specifically challenge this opinion, and it is a valid subject for expert testimony based on Ms. Poole's experience in the industry.

### 6. Ocean Bank's Prescreened Offers were Firm Offers of Credit Under the FCRA

▮ Apart from the misleading title of this Section and its *non sequitur* conclusion that "it is my opinion Ocean Bank's Offer was a firm offer of credit [that] did not violate the FCRA" (*id.* at 17)—both of which the Court strikes—this Section contains useful background information based on Ms. Pool's experience in the banking industry that could help the jury understand the evidence and issues in this case. Specifically, the jury could benefit from the information Ms. Pool provides on (1) the nature of home equity loans and their terms, and (2) the sub-prime lending industry. Further, Plaintiff has not challenged Ms. Pool's ability to testify on banking (as opposed to legal) matters. Apart from the two exceptions mentioned above, this portion of Ms. Pool's disclosure will remain in the report.

---

4. To avoid possible confusion resulting from Paragraph 4's inclusion of an indented block quotation, this paragraph begins, "Plaintiffs' Exhibit A states," and ends "the one that it contemplated." This same identification method is used throughout this Order for paragraphs including indented block quotations.

### 7. Damages

■ The Court strikes the conclusion of Ms. Pool's five-line entry on damages. While she can testify on the effect of Ocean Bank's mailer on Plaintiff's credit score, she may not draw the legal conclusion that "Mr. Tremble was not damaged." As a result, the Court strikes the first sentence of this Section from the disclosure.

### 8. Summary of Opinions

Ms. Pool's report also includes a "Summary of Opinions" section in which she provides a seven-bulletpoint list of her conclusions. The Court strikes those opinions that encompass (in whole or in part) the portions of the report that the Court removed above. Specifically, the Court strikes the first, fourth, fifth, and sixth conclusions in the "Summary of Opinions" section. (See id. at 8–9.)

### CONCLUSION

For the reasons described above, Plaintiff's Amended Motion to Strike Defendant's Disclosures and to Bar Testimony of Barry Connelly and Adele Pool is granted in part and denied in part. The Court notes that it will not necessarily admit those portions of the report that remain at trial or for any other purpose since Plaintiff may later challenge the testimony for reasons not raised in Plaintiff's motion. Furthermore, because removal of portions of the disclosures may adversely affect their continuity, the Court grants Ocean Bank leave to file amended disclosures consistent with this order.